IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EVA MARISOL DUNCAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:14-cv-00912 |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE**:

Comes now, Eva Marisol Duncan, Plaintiff herein, by and through her attorneys, who files this her Original Complaint, and would respectfully show the Court the following:

### JURISDICTION

1.  This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 which confers jurisdiction over Fair Credit Reporting Act claims without regard to the amount in controversy.  The sole claim asserted in this case is for violations of the Fair Credit Reporting Act.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1681*p*.

### VENUE

2.  Venue is proper in the Western District of Texas, pursuant to 28 U.S.C. §1337, based upon the fact that Plaintiff is a citizen of the State of Texas and resides in Bexar County which is located in the Western District of Texas.  The transactions and occurrences which give rise to this action occurred in Bexar County, Texas.

## PARTIES

3. Plaintiff is Marisol E. Duncan (hereinafter referred to as "Plaintiff"), who is an individual residing within the Western District of Texas. Plaintiff is a consumer as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq* ("FCRA") at §1681a(c).

4. Defendant, JPMorgan Chase Bank, successor by merger to Chase Home Finance, LLC (hereinafter referred to as "Chase" or "Defendant") is a national association incorporated pursuant to the laws of the United States of America with its principal place of business in Newark, Delaware.

## FACTUAL BACKGROUND

### A. THE ACCOUNT

5. On December 4, 2012, on the steps of the Bexar County Courthouse, Chase conducted a substitute trustee's sale of Duncan's home. The successful bidder and purchaser of the home was Federal National Mortgage Association, a/k/a Fannie Mae. Fannie Mae's bid amount was $194,288.72. Those purchase proceeds were applied to Duncan's account at Chase. Application of the sale proceeds extinguished the debt Duncan owed to Chase and ended their debtor-creditor relationship with respect to the mortgage. Since the foreclosure, Chase has correctly reported to credit reporting agencies that the account (beginning with #465196779) has a zero balance.

6. Duncan also had a Bank One credit card that was acquired by Chase, but which was paid in 2009, ending the debtor creditor relationship with respect to this credit card. Chase has correctly reported to credit reporting agencies that this account (beginning with #411816600195) has a zero balance.

7. Duncan has no other debtor-creditor relationship with Chase.

8. Notwithstanding the fact that there has been no debtor-creditor relationship between Duncan and Chase since December 4, 2012, Chase has accessed Duncan's Experian credit file of Duncan on at least these occasions:

> July 23, 2013
>
> September 9, 2013
>
> October 25, 2013
>
> November 8, 2013
>
> November 15, 2013
>
> January 9, 2014
>
> February 21, 2014
>
> March 7, 2014
>
> March 17, 2014
>
> April 14, 2014
>
> May 9, 2014
>
> May 15, 2014
>
> June 9, 2014
>
> July 10, 2014

### B.  THE CONSUMER, THE USER AND THE DATA REPOSITORIES

9. Plaintiff is a consumer as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq* ("FCRA") at §1681a(c).

10. Experian Information Solutions, Inc. (hereinafter referred to as "Experian") is corporation organized under the laws of the State of Ohio with its principal place of business in

Allen, Texas. Experian is a "consumer reporting agency" as that term is defined in 15 U.S.C. §1681a(f). In connection therewith, Experian acts as a data repository, assembling and storing information on consumers for the purpose of furnishing consumer reports to third parties.

11.  Chase is a subscriber and user of consumer reports issued by Experian.

12.  Chase also furnishes data about its experiences with consumers with whom it transacts business to Experian.

13.  Chase is a furnisher of information as contemplated by the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer.

### C. ACCESSING THE CONSUMER'S CREDIT INFORMATION

14.  On or about July 23, 2013 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

15.  On or about September 9, 2013 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

16.  On or about October 25, 2015 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to

Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

17. On or about November 8, 2013 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

18. On or about November 15, 2013 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

19. On or about January 9, 2014 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

20. On or about February 21, 2014 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the

information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

21. On or about March 7, 2014 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

22. On or about March 17, 2014 Chase accessed the contents of Plaintiff's credit file from Experian, twice. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

23. On or about April 14, 2014 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

24. On or about May 9, 2014 Chase accessed the contents of Plaintiff's credit file from Experian. In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

25.     On or about May 15, 2014 Chase accessed the contents of Plaintiff's credit file from Experian.  In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

26.     On or about June 9, 2014 Chase accessed the contents of Plaintiff's credit file from Experian, twice.  In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

27.     On or about July 9, 2104 Chase accessed the contents of Plaintiff's credit file from Experian.  In connection therewith, Chase made a general or specific certification to Experian that Chase sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

## CLASS ACTION ALLEGATIONS

28.     This action is brought on behalf of a class consisting of (i) all persons (ii) whose consumer credit reports were accessed by Defendant (iii) at a time when Defendant did not have a credit relationship with said person of the kind specified in 15 U.S.C. § 1681b(a)(3)(A)-(F), and (iv) during the two year period prior to the filing of the complaint in this action.

29.     The class is so numerous that joinder of all members is impractical.  Upon information and belief, based on reported cases, and because the credit access request is

computer driven, Plaintiff alleges Defendant has unlawfully accessed the credit reports of hundreds or thousands of consumers in the United States. For example, Chase agreed that numerousity was satisfied when it settled a prior case alleging the same acts that are alleged in this case, *Sleezer v. Chase Bank USA N.A.* 07-CA-961-H (W.D. Tex. 2009). In other similar cases the class consisted of 7,500 members in *King v. United SA Fed. Credit Union* SA-09-CA-937-NN (W.D. Tex. 2009), 90,534 members in *Baier v. FleetBoston Financial Corporation*, 04-507, (E.D. Pa), 1.1 million members in *Nienaber v. Citibank,* 04-4054 (S.D.S.D.) and 2.2 million members in *Keener v. Sears*, 03-01265 RT (C.D. Cal 2006) and 27,350 members in *Barel v. Bank of America* 255 F.R.D. 393, 398 (E.D. Pa. 2009 )

30. There are questions of law and fact, common to the class, which predominate over any questions affecting only individual class members.  The principle question is whether Defendant's conduct in connection with unlawfully accessing consumers' credit reports in the manner alleged (or described) violates the FCRA.

31. There are no individual questions, other than the identification of class members which can be determined by ministerial inspection of Defendant's records.

32. The Plaintiff will fairly and adequately protect the interest of the class, and is committed to vigorously litigating this matter.  Plaintiff has retained counsel experienced in handling class actions and consumer claims.  Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this claim.

33. Plaintiff's claims are typical of the claims of the class, which all arise from the same operative facts and based on the same legal theories.

34. A class action is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Settlement classes have previously been certified in FCRA "impermissible access" cases. See e.g. *King v. United SA Fed. Credit Union* SA-09-CA-937-NN (W.D. Tex. 2009); *Sleezer v. Chase Bank USA N.A.* SA-07-CA-961-H (W.D. Tex. 2007); *Keener v. Sears Roebuck*, 03-1265 (C.D. Cal. 2003); *Perry v. FleetBoston Financial Corporation,* 04-507, (E.D. Pa. 2004), *Nienaber v. Citibank*, 04-4054 (S.D. 2004.); *Barel v. Bank of America*, 255 F.R.D. 393 (E.D. Pa. 2009).

## GROUND FOR RELIEF

### FAIR CREDIT REPORTING ACT - IMPERMISSIBLE ACCESS

35. Plaintiff hereby re-alleges and incorporates herein by this reference the allegations set forth in Paragraphs No. 1 through 34 of this Petition.

36. Chase is a "person" as that term is defined in 15 U.S.C. §1681a (b).

37. The Fair Credit Reporting Act establishes very specific rules placing limitations upon an entity (or "person") seeking to obtain a consumer's credit history or the content of a consumer's credit file, as follows:

> **(f)** **Certain use or obtaining of information prohibited.** - A person shall not use or obtain a consumer report for any purpose unless -
>
> **(1)** the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> **(2)** the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. §1681b(f).

38. Section1681 b(a)(3) of the Fair Credit Reporting Act lists the all-inclusive purposes for which a consumer report can be obtained, as follows:

**(a)** **In General.** - * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

\* \* \*

**(3)** To a person which it has reason to believe -

**(A)** intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

\* \* \*

**(F)** otherwise has a legitimate business need for the information -

**(i)** in connection with a business transaction that is initiated by the consumer; or

**(ii)** to review an account to determine whether the consumer continues to meet the terms of the account.

39. After Chase sold Duncan's home to Fannie Mae and applied the proceeds to satisfy Duncan's loan, and after Duncan paid her BankOne/Chase credit card in 2009, Chase had actual knowledge that it no longer had a permissible purpose to obtain Plaintiff's credit information from Experian.

40. When requesting Plaintiff's credit information from Experian on each of the occasions referenced herein, Chase had actual knowledge that it did not have a permissible purpose to obtain such credit information concerning Plaintiff.

41. For Chase to repeatedly and impermissibly access the credit files of consumer whom are known by Chase to no longer have accounts constitutes willful non-compliance with

the Fair Credit Reporting Act; this is especially true when Chase has before settled a class action case involving this exact same conduct. (The *Sleezer v. Chase* settlement included zero-balance closed accounts).

42. As a direct and proximate result of Chase's willful conduct as outlined above, Plaintiff and the class are entitled to $100-$1000 each, plus punitive damages and reasonable attorney's fees together with the costs of this action as provided by 15 U.S.C. §1681n.

43. Alternatively, the impermissible access of Plaintiff's credit information constitutes a negligent violation as set forth in 15 U.S.C. §1681o. In this regard, Plaintiff and the class should be awarded judgment for her actual damages in an amount to be proven at trial, plus attorney's fees together with the costs of this action.

## JURY DEMAND

44. Plaintiff hereby requests, for herself and members of the class, a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to answer and appear herein and that upon final hearing and trial on the merits hereof, Plaintiff have and recover judgment against the Defendant for the following:

    a. Certify this action as a class action;

    b. Actual damages;

    c. Statutory damages;

    d. Punitive damages;

    e. Costs as provided for by statute or Court rule;

    f. Reasonable attorneys' fees incurred through trial and any appeal taken therefrom;

    g. Interest at the lawful rate until paid;

    h.      Such other and further relief to which Plaintiff may be justly entitled, including awarding Plaintiff her actual and statutory damages and attorneys' fees in the event the case is not certified to use the class action procedure.

          Respectfully submitted,

          RILEY & RILEY
          ATTORNEYS AT LAW

          By: /s/ *Charles Riley*
          CHARLES RILEY
          State Bar No. 24039138
          DARBY RILEY
          State Bar No. 16924400
          320 Lexington Avenue
          San Antonio, Texas 78215
          Telephone: (210) 225-7236
          Facsimile: (210) 227-7907
          charlesriley@rileylawfirm.com
          *Attorney for Plaintiffs*