**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **EVA MARISOL DUNCAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CASE NO. 5:14-CV-00912-FB-JWP** |
| | § | |
| **JPMORGAN CHASE BANK, N.A.,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

---

**UNOPPOSED MOTION FOR:**
**(1) PRELIMINARY APPROVAL OF THE TERMS OF THE PROPOSED**
**SETTLEMENT, (2) CONDITIONAL CERTIFICATION OF A SETTLEMENT**
**CLASS, AND (3) APPROVAL OF PROPOSED NOTICE TO THE CLASS**

---

**TO THE HONORABLE FRED BIERY, CHIEF UNITED STATES DISTRICT JUDGE:**

Eva Marisol Duncan (hereinafter referred to as "Plaintiff"), on behalf of herself and others similarly situated, without opposition from Defendant, moves the Court pursuant to Federal Rule of Civil Procedure 23 for (1) preliminary approval of the proposed class action settlement in this case, (2) conditional certification of a settlement class, and (3) approval of the proposed plan to provide notice to the class members, and shows:

### I. BACKGROUND

The Fair Credit Reporting Act ("FCRA") permits creditors to access or "pull" credit information from files maintained by credit reporting agencies only for certain specified "permissible purposes."[1]  One permissible purpose is to conduct an "account review", i.e. a creditor may seek information from a given consumer's credit report when it "has a legitimate business need for the information to review an account to determine whether the consumer

---

[1] See, 15 U.S.C. §1681b

continues to meet the terms of the account" or it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the … review … of an account of[] the consumer"[2]. For example, a permissible account review inquiry might be for the purpose of determining whether a credit card or other account should be retained or closed, or its terms modified, either in favor of the consumer or the creditor.

These account reviews are initiated by the creditor and are considered "soft pulls" because the creditor "pulls" information from the consumer's report, but the pull is not visible to any party other than the pulling creditor and the consumer, and does not affect the consumer's credit score. Further, consumers only learn of the soft pull by reviewing their credit reports; they are not routinely notified that a soft pull has actually occurred. Conversely, "hard pulls" may occur after the consumer has initiated the transaction by, for example, applying for a new credit card, auto loan, or other financing transaction, and as part of the application the consumer authorizes the creditor to pull the consumer's credit report. Hard pulls are seen by other creditors and users who access the consumer's credit report information, and hard pulls can adversely affect a consumer's credit score for a period of time.

Plaintiff is a former customer of JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A. (together, "Chase"). She has had no open account with Chase since late 2012. In 2014 she learned by reviewing her Experian[3] credit report that Chase was still periodically conducting soft pulls of her credit file for the alleged purpose of conducting account reviews. Plaintiff's Chase accounts had long been closed with no balance due or owing to Chase.

---

[2] 15 U.S.C. §1681b (a)(3)(A) & (F)(ii).
[3] Experian Information Solutions, LLC, Trans Union, LLC and Equifax, Inc. are the "big three" credit reporting agencies that compile from numerous private and public sources information about the consumers' personal and credit history, and then charge users or "subscribers" to access that information for credit and other purposes.

2

On October 16, 2014, Plaintiff filed her Complaint against JPMorgan Chase Bank, N.A. In it she alleged that Chase had no permissible purpose to pull her credit file information from Experian because she had no account relationship with Chase on the dates that Chase accessed her credit.  Plaintiff alleged that Chase's conduct was willful, in part because Chase had settled a class action case in this judicial district where essentially the same allegations had been made. *See Sleezer v. Chase Bank USA, N.A.*, 5:07-CV-00961-HLH (Class action settlement approved Aug. 6, 2009, Dkt. #74).

For willful violations of the FCRA, successful plaintiffs are entitled to recover statutory damages of $100 – $1,000, attorneys' fees, and potentially, punitive damages.[4]  In her suit, Plaintiff sought such damages for herself and for the members of the class she seeks to represent. For merely negligent violation of the FCRA's permissible purpose provisions, consumers are restricted to recovery of their actual damages.[5]  It is extremely difficult to prove actual damages in any account review case because "soft pulls" are seen only by the creditor and the consumer, and do not affect credit scores.

When Chase answered the Complaint, it did not deny that it had conducted account reviews of Plaintiff's credit file.  It did however deny that the account reviews were impermissible.  Further, Chase maintained that even if the credit file pulls were not permissible under the FCRA, they were not the result of willful conduct, and so neither Plaintiff nor the class members were entitled to statutory damages.  Chase asserted several other affirmative defenses to the merits of the case and denied that the case could be properly certified as a class action.

Edified by the prior *Sleezer* case, Plaintiff's counsel propounded formal discovery requests on Chase, and after several initial conferences between the parties, the parties agreed to

---

[4] 15 U.S.C. §1681n.
[5] 15 U.S.C. §1681o.

mediate this case.   The Honorable Edward A. Infante (Ret.) was chosen as mediator by the parties due to his extensive experience in the settlement of large class action cases, in particular those involving claims for statutory damages under the FCRA, the Telephone Consumer Protection Act, 42 U.S.C. § 227, and other consumer protection statutes.   With the Court's approval, the parties stayed discovery and suspended the proceeding pending the outcome of the mediation.

The mediation occurred on June 8, 2015 at the JAMS office in San Francisco, California. Prior to the mediation the parties exchanged factual information and documents, as well as confidential mediation briefs detailing their respective positions on the substantive FCRA "account review" law applicable to the case,  their positons on class certification issues, and their views on whether willful conduct could be proven on a class-wide basis.  Prior to and during the mediation Chase also informally provided to Plaintiff's counsel additional factual information necessary to evaluate the case.

The mediation ended with an agreed settlement in principle.  Confirmatory discovery by deposition testimony of Chase's designated corporate representative, and more informal information exchanges continued after the mediation, as did nearly four months of continued negotiations over several aspects of the written settlement agreement.  A Settlement Agreement and Release was signed by the parties on September 29, 2015. A copy of the agreement and its exhibits is attached hereto as **Appendix 1.**

## II.  MATERIAL TERMS OF THE SETTLEMENT

This settlement will establish an 8.75 million dollar common fund against which class members may file a claim and receive a pro-rata share of the net settlement fund, after payments from the fund are made for attorneys' fees, a service award for plaintiff, and the costs of notice

4

and settlement administration. Further, for a period of at least 3 years after the settlement, Chase will conduct annual audits reasonably designed to confirm that Chase's periodic account review inquiries have excluded individuals who owe no debt to Chase, retain no interest in any property securing a debt owed to Chase, and have no other account with Chase, thus conferring significant additional consideration on Settlement Class Members.

## III.  THE CLASS ACTION SETTLEMENT PROCESS

### A.    <u>Procedure</u>

Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a two-step process.  First, the court conducts a preliminary review to determine whether the proposed settlement is "within the range" of possible approval, *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 662 (N.D. Tex. 2010) (preliminarily approving settlement), or, in other words, whether there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness," *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 821751, at *1 (S.D.N.Y. Jan. 12, 2015) (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)). This step typically includes a conditional certification of the class for settlement purposes and approval of the form of notice to be sent to the class.  *Manual for Complex Litigation* §21.132 (4th ed. 2004) ("*MCL*") ("When a case settles as a class action before certification, the parties must present the court a plan for notifying the class and, if Rule 23(b)(3) applies, providing an opportunity to opt out, along with the motions for certification and preliminary approval of the settlement.").  If the court grants preliminary approval and notice is sent to the class, then in the second step of the settlement approval process the court conducts a final "fairness hearing" at which all interested parties are afforded an opportunity to be heard on the proposed settlement.

The ultimate purpose of the fairness hearing is to determine if the proposed settlement is "fair, reasonable, and adequate." *DeHoyos v Allstate Corp. et al.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (Biery, J.); Fed. R. Civ. P. 23(e)(2).

By this motion, Plaintiff seeks to accomplish the first step, i.e. conditional certification for settlement purposes, approval of the plan to provide notice to the individual class members, and preliminary approval of the terms of the settlement. As part of this first step, Plaintiff will also request appointment of the class representative, appointment of class counsel, and a certain time and date for the final fairness hearing so that it can be inserted into the notice to the class members. Defendant does not oppose the motion.

**B.      Standards**

For preliminary approval, "the standards are not as stringent as those applied to a motion for final approval." *In re OCA, Inc. Secs & Derivative Litig*. 2008 WL 4681369, at *11 (E.D. La. Oct 17, 2008); *see also MCL* §21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."). On preliminary approval, courts consider the following factors: whether the settlement (1) discloses any reason to doubt its fairness, (2) has any obvious deficiencies, (3) proposes to grant preferential treatment to class representatives or segments of the class, (4) proposes excessive compensation to attorneys, and (5) appears to fall within the range of possible approval. *OCA, Inc.*, 2008 WL 4681369 at *11 (internal citations omitted).

Courts often note that a proposed settlement reached through arms length negotiation is entitled to a judicial presumption of fairness. *See DeHoyos*, 240 F.R.D. at 287 ("[T]here is a strong presumption in favor of finding the settlement fair, adequate and reasonable.") (collecting cases); *see also Klein*, 705 F. Supp. 2d at 650 ("[C]ourts are to adhere to a strong presumption

6

that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval.").

## IV. ARGUMENT

**A.**    **The Proposed Settlement Merits Preliminary Approval**

**1.**    **There is No Reason to Doubt the Fairness of this Settlement.**  Both parties are represented by competent counsel who are experienced in consumer class action litigation and who reached this multi-million dollar settlement of a complex claim during arms-length negotiations, conducted with the assistance of a nationally renowned mediator.   There is no reason to doubt the fairness of this settlement. *See, Decl. of Hervol, Appx. 2, Ex. C, para. 7; Decl. of Bingham Appx. 2, Ex. D, para. 15; DeHoyos*, 240 F.R.D. at 287 ("Importantly, at least one treatise has held that courts may presume a proposed settlement is fair and reasonable when it is the result of arms' length negotiations.

**2.**    **There Are No Obvious Deficiencies in the Settlement**. The parties have negotiated a reasonable settlement and a program to provide notice of the settlement to the class members that is fully compliant with Fed. R. Civ. P. 23 (c) (2) (B). Most settlement class members will be sent by regular mail a notice with a very simple and detachable, pre-paid claim form.  All notices will direct class members to an easy to find and easy to remember settlement website.  The website will have a long-form notice and important court documents, list important dates, and have online claim- filing capability. In addition to the mailed notices, there will be two publication notices, one in People magazine and another in Better Homes and Gardens. These publications were chosen after consultation with the proposed Settlement Administrator, due to the publications' large circulation and expected ability to reach settlement class members.

No part of the settlement fund reverts back to Chase. All class members who file a claim

will receive a pro-rata share of the Settlement Fund, after deduction of their pro-rata share of the expenses. The only portion of the Settlement Fund that might go towards one or more charities by way of a *cy pres* distribution is represented by checks that remain uncashed after the Settlement Fund is distributed.

The settlement provides ample time and reasonable procedures for class members to exclude themselves from the settlement or to object to the settlement if they chose to do so.

In short, this is an arms' length settlement achieved through mediation and by attorneys who are, on both sides, experienced in class action litigation. The settlement terms and the process for approval of the settlement are designed to avoid "obvious deficiencies" and Plaintiff's counsel respectfully submits that there are no deficiencies in this settlement.

**3.      The Settlement Does Not Improperly Grant Preferential Treatment to Plaintiff or any Segment of the Class.**

The settlement does not improperly grant preferential treatment to Plaintiff or any segment of the class.  Plaintiff will be entitled to her pro rata share of the fund, as will all other class members.  There are no "segments" of the class to be concerned with, nor any sub-classes. Separate from her claim, Plaintiff, through her counsel will request a service award for her assistance in the prosecution of this case.  However, this award will come, if at all, only by motion to the court after notice to the other class members, in all forms of notice contemplated by the settlement.

Federal courts consistently approve service awards in class action lawsuits to compensate named plaintiffs for the services that they provide and the burdens that they shoulder during litigation.  *See, e.g.*, *DeHoyos*, 240 F.R.D. at 340 (citing cases).  Plaintiff, through her counsel, will seek an award of up to $10,000 to be paid from the settlement fund.  This modest request

8

compares favorably to service awards granted in other "account review" class action settlements in this judicial district. *See, e.g.*, *King v. United SA Federal Credit Union*, 5:09-cv-00937-NSN (W.D. Tex.) (Dkt. #31, Oct. 8, 2010) ($15,000 to each of two representatives).

      **4.**    **The Settlement does Not Excessively Compensate Class Counsel.** The reasonableness of attorneys' fees will be decided by the Court after Class Counsel files a separate motion for attorneys' fees and posts that motion on the settlement website for class members to review. Class Counsel anticipates that they will request one-third of the common fund as compensation for their fee and expenses. It is not unusual for district courts in the Fifth Circuit to award percentages of approximately one-third of the common fund. In fact, it is becoming increasingly common. *See, e.g.*, *City of Omaha Police & Fire Ret. Svcs. v LHC Grp.*, 2015 U.S. Dist. LEXIS 26053 at *8, Fed. Sec. L. Rep. (CCH) P98, 390 (W.D. La. Feb. 11, 2015); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 309 (S.D. Miss. 2014) (awarding 1/3 of $4 million dollar fund).

      **5.**    **The Settlement is Within the Range of Reasonableness.** The settlement is well within the range of reasonableness. Class counsel believe that the proposed cash award to those filing claims is an extraordinary settlement. First, it is a common fund settlement that allows class members to receive cash for a valid claim. Only one other FCRA impermissible access account review settlement has been reached in the United States wherein a common fund was created, and it was a small case, prosecuted by Mr. Hervol and Mr. Bingham, two of the proposed class counsel in this case. *See King v. United SA FCU*, SA-09-CV-0937-NN (W.D. Tex. Final Settlement Approved Oct. 8, 2010, Dkt # 31). All other known class action account review cases that have settled have provided non-cash relief, including short term credit monitoring, credit scores, or other "coupon-type" relief. *See, e.g.*, *Barel v. Bank of America*, 255

F.R.D. 393, 402 (E.D. Pa. 2009) (credit report monitoring); *Nienaber v. Citibank*, No. Civ. 04-4054 (S.D.) (credit report monitoring); *Perry v. FleetBoston Corp*., 229 F.R.D. 105, 110 (E.D. Pa. 2005) (two credit reports and scores); *Keener v Sears,* 03-cv-1265 (C.D. Cal) (Coupon for Sears store products).  The cash payment available to class members is significant, particularly in view of the challenges of litigating a claim for willful damages to judgment—and, even more to the point, the challenges of certifying a class for litigation on that claim.

Class counsel expects that the settlement fund, even after payment of the requested attorneys' fees and other expenses, will result in a payment of approximately $40-50 per claimant, depending upon the amount of claims made.[6] This dollar amount is comparable to amounts that have been approved in Telephone Consumer Protection Act cases, where the strict liability statute allows $500-$1,500 in statutory damages per TCPA violation. *See, e.g.*, *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) ($20-$40 per claimant); *Wilkins v. HSBC* 14-cv-190 (N.D. Ill) ($20-$40 per claimant); *Rose v. Bank of America*, 11-cv-02390 (N.D. Cal. Doc. 59) ($20-$40 per claimant); *Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) ($20-$40 per claimant); and *In re Jiffy Lube Int'l, Inc.* 11-MDL-2261, (S.D. Cal.) (Coupons worth about $17 each).

**B.**     **Conditional Class Certification For Settlement Only**

**1.**     **The Settlement Class Defined.** For purposes of the proposed settlement only, the parties seek certification of a class of people whose credit reports were accessed by Chase to conduct Account Review Inquiries after their Chase account relationships had ended. Specifically, the parties seek certification of a class defined as:

---

[6] *See* Declaration of Ben Bingham, discussing  a review of claim rates in over 30 TCPA settlement cases in several different judicial circuits  that was conducted in *Wilkins v. HSBC*, 14-cv-190 (N.D. Ill). *Decl. of Bingham, Appx. 2, Ex. D, para. 13.*

All persons who were borrowers or guarantors on a Chase account or Chase-serviced account and whose Consumer Report Information was accessed by Chase through an Account Review Inquiry during the period October 16, 2009 through October 16, 2014, at a time when the subject account met any one of the following criteria: (1) the account was closed with a zero balance; (2) the account had been sold or transferred to a third party; (3) the debt on the account had been discharged in bankruptcy; (4) Chase had foreclosed the property securing the account loan; or (5) Chase had sold in a short sale or had transferred through a deed in lieu of foreclosure the property securing the account loan.  Excluded from the Class are all current Chase employees, officers and directors, and the judge and magistrate judge presiding over this Action and their respective staff.

        **2.**        **Standards**. The certification requirements of Fed. R. of Civ. P. 23 generally apply even when certification is for settlement purposes.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). The one exception is that, because no trial is contemplated because of the proposed settlement, a district court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Id.* at 620; *accord In re Heartland Payment Systems*, 851 F. Supp. 2d 1040, 1058-1060 (S.D. Tex. 2012).  The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence.  *Id* at 1052.

        **3.**        **Rule 23 (a) Requirements.**   To be certified, the class must first satisfy four threshold requirements of Rule 23 (a), which provides that:

        (1)        the class is so numerous that joinder of all members is impracticable;

        (2)        there are questions of law or fact common to the class;

        (3)        the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

        (4)        the representative parties will fairly and adequately protect the interests of the class.

        **4**.        **Rule 23 (b) Requirements**.  If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3).  That requirement is that the district court make a finding that (1) questions of law or fact common to class members

11

predominate over questions affecting only individual members and (2) that a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3*)*.  These elements are relaxed when certification of a conditional settlement class is sought, because the settlement obviates any problems that would arise if the case were tried. *Heartland*, 851 F. Supp. 2d at 1058-1060.

### 5.     The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

**A.     Numerosity.**  Rule23 (a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).   In this case, there are approximately 2.2 million class members.  *See Hervol Dec. Appx. at para. 6.*   Therefore, numerosity is clearly satisfied. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting that courts have certified classes with as few as twenty-five or thirty members).

**B.     Commonality.**  Rule 23(a)(2) requires that there be questions of law or fact common to the class.  Commonality requires class-wide proceedings to have the ability "to generate common answers apt to drive the resolution of the litigation." *Walmart Stores, Inc. v. Dukes* 131 S. Ct. 2541, 2551 (2011); "Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  Commonality "is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members." *Heartland*, 851 F. Supp. 2d at 1053 (internal citations omitted).  The commonality requirement is satisfied because there are many questions of law and fact common to the

Settlement Class that focus on Chase's common practice of using automated criteria to conduct account review inquiries on the persons in the settlement class.

      **C.    Typicality.**  Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality accordingly does not require a complete identity of claims.  Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).

      In this case, Plaintiff asserts that Chase conducted a soft pull account review after her account relationships had ended.  She makes the identical claim on behalf of the class members, and believes that if this case went to trial she could prove the fact that Chase conducted soft pull account reviews on millions of people whose account relationships with Chase had ended.  The dispute in this case is whether the account reviews were done with a permissible purpose, and if not, whether Chase acted willfully. Here, Plaintiffs' claims are based on Chase's systematic, automated account review inquiries.  Because Plaintiffs' claims arise from the same course of conduct, typicality is satisfied.  Thus, the typicality requirement of Rule 23(a)(3) is satisfied. *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 498 (E.D. Pa. 2009) (Typicality satisfied in FCRA case where "[t]he claims of Mr. Chakejian's and each of the prospective class members arise from the same course of conduct, and are based on the same theory of liability.").

      **D.    Adequacy.**  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4*)*.  Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because

Plaintiff and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. *See, e.g.*, *Heartland*, 851 F. Supp. 2d at 1055-57.

Proposed Class Counsel respectfully suggest that the results achieved in this case are strong evidence of the adequacy of class counsel.  Further, Plaintiff's attorneys are knowledgeable and experienced in class action litigation and in litigation of FCRA claims and are free from conflicts with the class. *See Decl. of Hervol, Appx.2 Ex. C, para. 3, 4; Bingham Decl. Appx. 2 Ex. D, para. 7, 8.*  Plaintiff's counsel have vigorously prosecuted this case and understand their fiduciary responsibilities to the class. *Id.*

There is no intra-class conflict between the class representative and the other class members. Ms. Duncan not only understands the case, but it was her knowledge of the impermissibility of Chase's access to her credit report that caused the case to be brought in the first place.  She pledged in writing to waive any conflict when she authorized this suit to be brought as a class action.  *See Decl. of Charles Riley, Appx. 2, Ex. A, para. 7.*  There are no subclasses and every member who files a claim, including Ms. Duncan, will receive the same amount from the net settlement fund.

### 6.   The Requirements of Fed. R. Civ. P. 23(b) Are Satisfied

**A. Predominance and Superiority.**  In addition to satisfying the Rule 23(a) requirements, a damages class must also satisfy the requirements of Rule 23(b)(3); *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010).  Under that rule, the class proponent must establish that (1) "questions of law or fact common to class members *predominate* over any questions  affecting only individual members, and (2) that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  *Id*. (emphasis added).  These two elements

14

are commonly referred to as "predominance" and "superiority" requirements. Rule 23(b)(3) requires courts to consider the following factors when evaluating whether the predominance and superiority requirements are met: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Id.*

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance is satisfied so long as individual issues do not "overwhelm" common issues. *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, ⸺ U.S. ⸺, 133 S. Ct. 1184, 1196 (2013). Common issues predominate here because the central question concerning Chase's conduct in this case—whether Chase conducted systematic account reviews on class members' credit files—can be established through generalized evidence. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 ("[T]his case presents several common questions of law and fact arising from a central issue:  Heartland's conduct … the resulting injury to each class member from that conduct.  Given the settlement posture of this case and the Fair Credit Reporting Act claim, the common questions predominate over individual issues.")

Because the claims are being certified for purposes of settlement, there are no issues with manageability.  *Amchem*, 521 U.S. at 620 ("Confronted with request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  Additionally, resolution of millions of claims in one action is far superior to individual lawsuits and promotes consistency

and efficiency of adjudication.  Thus, certification for purposes of settlement is appropriate.

**7.      Appointment of Class Representative and Class Counsel.**  Additionally, at the preliminary approval stage, a court that certifies a class must also appoint class counsel.  Fed. R. Civ. P. 23(g).  In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.   In this case, for settlement purposes, it is proposed that the named Plaintiff Eva Marisol Duncan be certified as the class representative, and that the San Antonio law firms of Riley & Riley, The Law Office of H. Anthony Hervol, and Bingham and Lea, P.C. be appointed as class counsel.  As detailed in the declarations of Darby Riley, Charles Riley, H. Anthony Hervol, and Ben Bingham, each firm amply meets the requirements of Rule 23(g).  *See Decls. of Darby Riley, Charles Riley, H. Anthony Hervol, and Ben Bingham, Appx. 2, Ex. A- D.*

## V.  APPROVAL OF THE NOTICE TO THE CLASS MEMBERS

**A.      Standards.**   In class actions based on Rule 23(b)(3), class members must be furnished with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, (1974).  Rule 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal" and Rule 23(c)(2)(B) sets out the minimum contents of the notice. The Settlement Agreement establishes compliance with both rules.

**B.      The Notice Plan.**  The notice plan in this case includes direct mail notice to approximately 1.9 million class members.  The mailed notice will be a postage pre-paid "double

postcard" so that class members can simply tear off the claim form and mail it to the claims administrator, KCC.[7] The known names and addresses of identifiable class members will be provided by Chase to KCC, which will update through the National Change of Address Database maintained by the United States Postal Service. In addition, there will be two publication notices, one in *People*[8] magazine and one in *Better Homes and Gardens* magazine.[9]  *People* has the largest circulation of any magazine in the nation and KCC estimates additional, material, non-overlapping coverage for the Settlement Class through *Better Homes and Gardens*.[10]  Further, there will be a settlement website that will contain long form notices and relevant court documents, including the settlement agreement, and class counsel's fee application when filed.

All of the notices, in whatever form, will clearly, concisely, and neutrally apprise class members in plain language of the nature of the action, the definition of the class, the claims, their right to their own attorney, their right to object to the settlement or to exclude themselves, how and when objections or exclusions must be made.  For those class members who do not exclude themselves, all of the forms of notice will advise the class members of the binding effect of the class judgment.  The notices will also describe the processes and procedures for submitting claims for and collecting settlement proceeds.  Further, each notice directs class members to the settlement website for more detailed information.  In short, the proposed notice satisfies due process by "provid[ing] class members with the information reasonably necessary for them to make a decision whether to object to the settlement."  *In re Heartland*, 851 F. Supp. 2d at 1060 (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 186, 197 (5th Cir. 2010)).

---

[7]KCC is a large nationwide class action administration firms that has administered over 1,500 class action settlements.

[8] *People* magazine reportedly has the largest readership or reach of any American magazine, 46.6 million adults and over 3.5 million weekly circulation. Source: Wikipedia People (magazine) and sources cited therein.

[9] *Better Homes and Gardens* was chosen after consultation with the Settlement Administrator, which recommended it after analysis of the probable demographics of the class members. It reportedly has readership of 39 million adults. *See, Decl. of Bingham, Appx. 2, Ex. D. para. 14*.

## VI.  CONCLUSION

Plaintiff, for the reasons set forth above respectfully requests that the Court conditionally certify the proposed settlement class, preliminarily approve the proposed settlement, approve the plan of providing notice to the class members, appoint Plaintiff as the class representative and appoint the law firms of Riley & Riley, Law Office of H. Anthony Hervol, and Bingham and Lea, P.C. as Class Counsel.  Plaintiff further prays for general relief.

Respectfully submitted,

RILEY & RILEY
Attorneys At Law
320 Lexington Avenue
San Antonio, Texas 78215
(210) 225-7236 Telephone
(210) 227-7907 Facsimile
charlesriley@rileylawfirm.com

By: ___/s/Charles Riley_____
        CHARLES RILEY
        State Bar No. 24039138


LAW OFFICE OF H. ANTHONY HERVOL
4414 Centerview Dr., Ste. 200
San Antonio, Texas 78228
(210) 522-9500 Telephone
(210) 522-0205 Facsimile
hervol@sbcglobal.net

By:____/s/ H. Anthony Hervol_____
        H. ANTHONY HERVOL
        State Bar No. 00784264

BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819 Telephone
(210) 224-0141 Facsimile
ben@binghamandlea.com

By:____/s/Benjamin R. Bingham_____
        BENJAMIN R. BINGHAM
        State Bar No. 02322350

**ATTORNEYS FOR PLAINTIFF**

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves e-mail notification of such filing to the following counsel of record on this 30th day of September, 2015, and a true and correct copy of the above and forgoing has therefore been served on the following counsel of record for the Defendant at the e-mail addresses listed hereunder:

Noah A. Levine
Alan E. Schoenfeld
Fiona Kaye
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
noah.levine@wilmerhale.com
alan.schoenfeld@wilmerhale.com
fiona.kaye@wilmerhale.com

Wm. Lance Lewis
Kenneth A. Hill
QUILLING, SELANDER, LOWNDS
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
llewis@qslwm.com
kenhill@qslwm.com

        /s/ H. Anthony Hervol
        H. Anthony Hervol
        Attorney for Plaintiff