

FILED

FEB 16 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| EVA MARISOL DUNCAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. SA-14-CA-00912-FB |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| Defendant. | § | |

**THOMAS L. COX, JR'S OBJECTION TO PROPOSED SETTLEMENT**

To The Honorable District Judge

Comes Thomas L. Cox, Jr. ("Objector" or "Cox"), and files these Objections to the Proposed Settlement and to Attorneys' Fees. Cox received notice of the Notice of Proposed Class Action Settlement and Fairness by a postcard notice which is attached hereto. The Claim Number is JPD-10394270101-393725.

## 1. Notice of Intention to Appear and Request to Speak at the Hearing

Cox intends to appear at the hearing. Cox requests that he be allowed to appear in person at the final approval hearing on April 27, 2016 and to talk about these objections, and to otherwise participate in the final approval hearing. Cox does not intend to call any witnesses. Cox does not have counsel, but if Cox seeks *pro hac*

1

*vice* admission local counsel will be retained.

## 2.  Objections to the Settlement
### A.  Adequacy of Class Compensation

The size of the class is estimated to be roughly 2.2 million individuals.[1]  Class Counsel sought between $100.00-1000.00 for each class member according to the complaint.  It appears that a case seeking millions of dollars in damages for the class has been converted into a quick settlement driven by attorney fees.  In reviewing the docket sheet on Pacer on January 27, 2016 the docket sheet contains only 29 entries, strongly suggesting a quick settlement with limited work.  The case was filed on October 16, 2014 followed by a July 31, 2015 order directing the parties to file settlement documents by August 31, 2015.[2]The settlement agreement contains a "clear sailing" provision for Class Counsel's attorney fees.[3]

### B. Account Review Audits for Three Years.

Part of the consideration the class receives is Account Review Audits for three years. All Chase is agreeing to do is follow current law, this is required of Chase under current law. When reviewing the value of this consideration the Court should review the settlement and consider the following:

(1)  How much is the injunction worth to the class as a practical matter?

(2)  What is the dollar value the relief might yield?

(3)  What is the real cost to Chase?

---

[1] Order Dkt. 29, page 4
[2] Dkt 25
[3] Settlement Agreement  Paragraph 80

2

(4) Does the audit requirement do anything more than restate the obligation that Chase has under existing law?

(5) Is the class being asked to give up valuable economic damage claims?

Objector would submit that the answers to the listed above are:

(1) Very little.

(2) Unknown.

(3) Not much.

(4) No.

(5) Unknown.

## 3. Objections to the Proposed Attorney's Fees

### A. Legal Standards

Attorney fees in class actions require particular scrutiny. MANUAL FOR COMPLEX LITIGATION 4th § 13.24, pp. 180 - 182. It is especially "problematic when settlement negotiations involving attorney fees are conducted simultaneously with negotiations on the merits."

Although the practice of negotiating lump sum settlements is not prohibited, it "should be reviewed for fairness of the allocation between damages and attorney fees." (*Id.*) Since, "[i]n complex litigation. . .there is often no traditional client with the authority to negotiate the rate at which attorneys are to be paid." MANUAL FOR COMPLEX LITIGATION 4th § 14. Therefore, the Court should carefully scrutinize

any attorney fee request . Additionally, FED. R. CIV. P. 23 requires that class action attorney fees must be "reasonable."

The 5th Circuit previously had never explicitly adopted the percentage method, *see* MANUAL FOR COMPLEX LITIGATION 4th § 14.12, pp. 187 - 188, and, in fact, seems

to prefer the method used in *Longden v. Sunderman,* 979 F.2d 1095, 1099-1100 (5th Cir. 1992). Although in *Union Asset Mgmt Holdings A.G. v. Dell, Inc.* 669 F.3d 632 (5th Cir. 2012) the Court held that the district court did not abuse its discretion in using the percentage method and held that district courts have the flexibility to choose between the percentage and the lodestar method in common fund cases as long as the reasonableness factors set out in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) are followed.

The Johnson factors are:

- *The time and labor required.*

- *The novelty and difficulty of the issues.*

- *The skill required to perform the legal services properly..*

- *The preclusion of other employment. .*

- *The customary fee.*

- *Whether the fee is fixed or contingent.*

- *Time limitations imposed by the client or the circumstances.*

- *The amount involved and the results obtained.*

- *The experience, reputation, and ability of the attorneys.*

- *The undesirability of the case.*

- *The nature and length of the professional relationship with the client.*

- *Awards in similar cases.*

"In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel. *See, e.g., Strong [v. Bellsouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998)] 137 F. 3d at 849 ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."); MANUAL FOR COMPLEX LITIGATION 4[th] § 14.11. ("The court must distribute the [fee award] among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel.").   The court's duty to review attorneys' fees is no less compelling in common fund cases, like this case, where a separate fund to pay attorneys' fees is created as part of the class action settlement. *See e.g., Strong*, 137 F. 3d at 849.

The district court's close scrutiny of fee awards serves to "protect the nonparty members of the class from unjust or unfair settlements affecting their rights as well as to minimize conflicts that may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses." *Id.* (internal quotations and citations omitted.)  The court's review also "guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Id.* (citing *In re GM Trucks,* 55 F.3d at 820 (emphasizing that the "court's oversight function" serves to deflect the "potential public misunderstandings that may cultivate in regard to the interests of class counsel") (internal quotations an citations omitted); *Foster v. Boise-Cascade, Inc.,*

420 F. Supp. 674, 680 (S.D. Tex. 1976), aff'd, 577 F. 2d 335 (5th Cir. 1978) (explaining that the court has the "obligation in any Rule 23 class action to protect [the class action device] from misuse" because the "most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees")(internal quotations and citations omitted.)).

To fulfill its duty, "the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." *Strong*, 137 F. 3d at 850.   Although exacting judicial review of fee applications may be burdensome, it is "necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law." MANUAL FOR COMPLEX LITIGATION § 14.231 (4th ed. 2004.)  While this circuit allows a district courts to use the lodestar method to assess attorney fees in class action suits or a percentage of the fund.   The district court should use a lodestar cross-check to determine the reasonable number of hours expended on the litigation and the reasonably hourly rate for the participating attorney.   The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.   The district court may adjust the lodestar upward or downward after a review of the twelve factors set forth in *Johnson*.  After the court calculates the lodestar, it must scrutinize a fee award under the *Johnson* factors and not merely "ratify a pre-arranged compact."   *In Re: High Sulfer Content Gasoline Products Liability Litigation,* 517 F. 3d 220, 228(5th Cir. 2008).

Although 25% of a common fund seems to be a typical benchmark, such benchmarks are subject to considerable fluctuation and should be applied, if at all, with the caveat that "[t]he benchmark percentage should be adjusted, replaced by a lodestar calculation, when special circumstances indicate that the percentage

recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *See Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990).  Cox  reserves  the right to file an amended objection after reviewing the yet to be filed fee petition.

### 4. Is *Cy Pres* Appropriate?

*Cy pres* awards in class action settlement have increased since the earliest reported use of a *cy pres* award in *Miller v. Steinbach*, 1974 WL 350 at *2 (S.D. N.Y. Jan. 3, 1974).

The term originates from the French phrase -- *cy pres comme possible* -- which translates "as near as possible."  The term/concept has been a part of American jurisprudence for years but was generally limited to estates and trusts. The concept has experienced a rapid expansion in class action litigation as a means of disposing of unclaimed class awards and settlements.  There are other methods or general theories as to distribution of unclaimed awards:

(1)    distribution of unclaimed awards to class members who submitted claims; and

(2)    escheat the remainder to the state.[4]

The problem of distributing class funds to third party charities that have little or no connection to the class members was first considered in the frequently cited

---

[4] *Cy Pres, a Not So Charitable Contributor to Class Action Practice*, John Beisner, 2d Edition, 2010, p. 8.

case of *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). The problem, as that court noted, was that the benefit was given to a group too far removed from the class and suggested that if *cy pres* was used, it should be to the next best distribution. Here, the proposed settlement attempts to distribute the funds to unnamed groups to be determined by the parties at a later date. The best that can be said for a *cy pres* award in this situation is that it might make a class member feel good to give the Defendants' money to someone else. This is different than compensating the class for the Defendants' wrongdoing.

The Court in its role as a fiduciary should carefully review the intended *cy pres* recipients for any relationship with any class representatives, class counsel, the Defendants and their attorneys. Any relationship between the parties or their attorneys with the recipient should be grounds for disqualification of the intended recipient. This could be readily accomplished by the Court requiring a Disclosure Statement. In addition, to avoid any ethical issues, no recipient of a *cy pres* award should have a relationship with the Judge.

**4. Class Counsel and the Class Representatives failed to adequately represent the class.**

"Both the United States Supreme Court and the Courts of Appeal have repeatedly emphasized the important duties and responsibilities that devolve upon

a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation,* 360 F.Supp.2d 166, 192-94 (D. Mass. 2005), citing, *inter alia, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) ("Rule 23 (e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'"); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement).

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members .... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)). *See also Riker v. Gibbons,* 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." *Herbert Newberg & Alba Conte,* NEWBERG ON CLASS ACTIONS § 13:20 (4TH ED. 2002).

**6. The Settlement is Not Fair, Reasonable, or Adequate Because of the Improper Insertion "Confidential" Provisions" Not Included in the Settlement**

The Settlement Agreement also contains a provision[5] stating: "Chase also shall have the right to terminate the settlement by serving on Class Counsel and filing with the Court a notice of termination…if the number of settlement class members who timely request exclusion from the settlement class equals or exceeds the number specified in a separate letter. The number shall be confidential except to the Court, who shall upon request be provided with a copy of the letter for *in camera* review. Its terms are a complete mystery to unnamed class members. Yet, it gives Chase unchecked power to kill the entire Settlement forever if some condition(s)—which it is impossible to define—occur. At the minimum the terms should be disclosed to the class. This cannot be considered fair, adequate, or reasonable under even the most generous and flexible definitions of those terms. The settlement also impermissively requires signed objections by objectors and refuses to recognize mass opt-outs.

## 7. Other Objections

Cox wishes to incorporate in this objection the valid objections made by other objectors.

---

[5] Settlement Agreement Paragraph 86

Respectfully submitted,


Thomas L. Cox Jr.

Texas Bar 04964400

7129 Tabor Dr.

Dallas, TX  75231-5647

469-531-3313

tcox009@yahoo.com

# CERTIFICATE OF SERVICE

I, Thomas L. Cox Jr. hereby certify that on the _12th_ day of _February_ 2016, a true and correct copy of the Objection to Proposed Settlement was served on all counsel of record by United States mail as directed by the notice I received.

U.S. District Clerk's Office
655 E. Cesar E. Chavez Blvd.
Room G65
San Antonio, TX 78206

Riley & Riley
320 Lexington
San Antonio, Texas 78215

Noah A. Levine Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich St
New York NY 10007

Thomas L. Cox Jr.