# EXHIBIT "2"
## Declaration of Charles Riley

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EVA MARISOL DUNCAN, | § § | |
| Plaintiff, | § § | |
| V. | § § § | CIVIL ACTION NO. 5:14-CV-00912-FB-JWP |
| JPMORGAN CHASE BANK, N.A., | § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## DECLARATION OF CHARLES RILEY

My name is Charles Riley. I am over the age of 18 years old and fully competent to make this declaration. I have personal knowledge of the facts set forth herein and they are true and correct.

1. I am an attorney, licensed in Texas state courts, and in the Federal District Courts for the Western District of Texas. I am one of the attorneys representing named Plaintiff Eva Marisol Duncan and the certified class in the above-styled and numbered case. I make this Declaration in support of Plaintiff's Motion for Final Approval submitted herewith ("the Motion"). This Declaration supplements the two declarations that I have previously made in this case, Doc. 28-2, Ex. A, made in support of preliminary approval of the proposed settlement, and Doc. 32-1, Ex. 1, made in support of Class Representative's service award and Class Counsels' fee and expense award.

2. My co-counsel Ben Bingham and Tony Hervol testify extensively concerning the application of the *Reed*[1] factors, in their Declarations in support of the Motion. I join in their testimony, and verify that the settlement for which final approval is sought was not the product of fraud or collusion. Rather, the settlement represents a vigorously negotiated compromise by which the "face value" of the claims of the class were reasonably discounted to take into account the extensive risk and expense of litigating this matter.

3. Class Counsel (and counsel for the Defendant) recognized that a number of important and binding precedents, namely the *Levine* case and the *Wilting* case, directly contradicted Plaintiff's claim that account reviews of closed accounts were improper and actionable as willful violations of the Fair Credit Reporting Act ("FCRA"). See, the Motion at pp. 13-14. Thus, under the U.S.

---

[1] *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)

Supreme Court precedent in *Safeco*[2], it would be difficult for Plaintiff to establish at the trial court level that JPMorgan Chase Bank, N.A.'s ("Chase's") actions constituted objectively willful violations of the FCRA because there was no "authoritative guidance" prohibiting such account reviews of closed accounts. See, the Motion at pp. 15-18. Because actual damages resulting from such account reviews would be difficult to establish, the success of Plaintiff's case hinged on whether she and the class could establish that Chase acted willfully and thus would be liable for statutory damages.

4. Additionally, much uncertainty is created by the pending U.S. Supreme Court case of *Spokeo, Inc. v. Robins,* in which certiorari was granted to determine if actual damages are a prerequisite to federal court jurisdiction. See, the Motion at pp. 18-20. Thus, there was no doubt that Plaintiff's claim herein had a small probability of success and that any positive outcome would only result from a protracted, expensive fight with a large bank with unlimited funds to pay for exceptional legal representation. Plaintiff's success would require her to expand and clarify the law regarding account reviews of closed accounts and the application of the willfulness standard in FCRA litigation. And an adverse decision in *Spokeo* would moot any success that Plaintiff might have in that regard. The Supreme Court decision is Spokeo is expected in May or June of this year. We were able to negotiate a settlement agreement that will survive an adverse decision for plaintiffs in *Spokeo,* but of course that clause depends on the approval of the settlement by the Court. See Settlement Agreement Doc. 28-1, ¶110, p.22.

5. In my opinion, one reason the proposed settlement in question was even possible was due to the fact that my co-counsel had previously litigated a case against Chase's sister company in which account reviews of closed credit card accounts were at issue.[3] While Chase did not admit liability in that case, the fact that it had previously been sued for conducting account reviews on closed accounts and had settled that litigation and ceased to conduct such reviews on its former credit card customers would potentially constitute strong evidence that Chase knew such reviews were improper but hadn't changed its practices with respect to mortgage accounts. Additionally, the prior experience of my co-counsel in litigating this very similar *Sleezer* case provided valuable insight into the account review procedures employed by Chase and allowed Class Counsel to efficiently establish the key facts in the present case. Thus, a relatively early mediation was made possible, as most of the facts underlying Plaintiff's claims could be clearly established and were therefore essentially undisputed.

---

[2] *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007)
[3] *Sleezer v. Chase Bank (USA)* N.A., SA-07-CA-0961-H (W.D. Tex. (Filed Nov. 27, 2007, settlement approved Aug. 6, 2009, Doc. 74)

6. As set forth in the Declarations of my co-counsel, the settlement that was negotiated in this case is unprecedented. The size of the common fund created and the extent of the injunctive relief included both indicate that this settlement was fairly negotiated and, in light of the limited prospects for the success of the case in litigation as set forth above, a very good deal for the class. As none of the class members are known to have suffered actual damages as a result of the account reviews in question, and would find it difficult to bring the claims at issue on an individual basis due the same legal precedents that we faced, and the limited amount in controversy. This settlement provides relief to class members that is almost certainly greater than what they could obtain individually. This is especially true when the value of the injunctive relief and the educational benefits derived from the proposed settlement are taken into account. See, Declaration of Evan Hendricks, Doc. 32-4, Ex. 4.

7. I can personally attest to the educational benefits derived from notifying over 2.1 million people of the pendency of this action and the proposed settlement at issue. My office has been deluged with hundreds of calls and emails over the past three and a half months since the first class member notices went out, and we have spent many hours answering class members' questions and explaining the limits the FCRA places on the access to their credit report, methods for obtaining and checking their credit report, and the importance of routinely checking their credit report for accuracy and to ensure that only those with permissible purposes are able to access their credit report. Many class members have thanked me for providing them with this information, which they would not have obtained but for their involvement in this class action lawsuit.

8. Similarly, many class members with whom I have spoken or corresponded have thanked Mrs. Duncan and Class Counsel for helping to protect their privacy. Chase took the position that it was allowed to access its former customers' credit reports for account review purposes. But, as part of this settlement, it has agreed to stop doing so and to monitor its procedures going forward to ensure that it no longer does so. Thus, many people who had no idea that their privacy was being invaded have garnered a benefit from this settlement that they would not otherwise have received.

9. Out of the hundreds of calls I have taken from class members, only a couple of class members have expressed any concern about the total amount of the settlement fund or the service award, attorney's fees and administrative costs sought by Mrs. Duncan, Class Counsel, and the settlement administrator. Instead, the overwhelming majority have expressed satisfaction that Chase is being held accountable for violating the privacy rights of its former customers and have acknowledged that Mrs. Duncan and Class Counsel deserve reasonable compensation for the time, expense, and effort put forward on

behalf of the class. Many class members have discussed the difficulty in finding legal counsel to represent them with other legal matters involving Chase, and recognized that they would never have known of or been able to pursue the claims brought herein without the work of Mrs. Duncan and Class Counsel. Several class members stated that any attorney they sought to hire to assist them with claims against Chase would charge at least a 33.33% contingent fee, if not a higher percentage or an hourly fee that most could not afford to pay.

10. The extraordinarily high claim rate in this case is further testament to the fact that notice to the class was extremely effective and that most class members were enthusiastic about the proposed settlement and keen to participate in it. And while the high claim rate drives down the amount of the pro rata distribution to each class member and drives up the cost of administration, the fact remains that amount to be paid by Chase per class member in connection with this proposed settlement is on par with settlements approved for much stronger Telephone Consumer Protection Act cases and far exceeds any known FCRA settlements.  See, Plaintiff's Unopposed Motion and Brief for Approval of Service Award to the Class Representative and for Approval of Award of Class Counsels' Attorneys' Fees and Expenses, Doc. 32, at Para. 39.

11. This case arose indirectly out of a foreclosure of Ms. Duncan's home in December 2012, which foreclosure was thankfully reversed via a settlement allowing Ms. Duncan to repurchase of the home and thereby pay off her Chase loan in full. After the foreclosure and repurchase, Chase continued to conduct account reviews of Ms. Duncan's credit report. Because Ms. Duncan worked in the consumer finance industry and was familiar with her credit report and the FCRA, she noticed these improper pulls and contested them, and thereby became the catalyst for a nationwide class action lawsuit that has already provided substantial benefits to countless consumers. Approval of the proposed settlement in question will provide additional significant benefits to the class.

I declare under penalty of perjury the foregoing is true and correct.

Date: April 13, 2016

CHARLES RILEY
State Bar. No. 24039138
320 Lexington Avenue
San Antonio, Texas  78215
(210) 225-7236
(210) 227-7907 Facsimile
charlesriley@rileylawfirm.com

4