**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

--------------------------------------------------------------------------------------- :

EVA MARISOL DUNCAN,                           :

                                        Plaintiff,          :

               v.                                                  :

JPMORGAN CHASE BANK, N.A.,                :

                                        Defendant.       :                Civ. Action No. 5:14-cv-00912-FB-JWP

                                                                    :

                                                                    :

                                                                    :
------------------------------------------------------------------ :

**[PROPOSED] ORDER OF FINAL APPROVAL OF SETTLEMENT**

On April 13, 2016, Plaintiff and Class Counsel filed their Motion for Final Approval of

Class Action Settlement ("Motion for Final Approval"), seeking Final Approval of the Settlement

Agreement and Release ("Agreement" or "Settlement") with JPMorgan Chase Bank, N.A.

("Chase" or "Bank").[1]  In support, Plaintiff filed declarations from an expert in privacy and the

Fair Credit Reporting Act ("FCRA"), as well as several other declarations supplementing the

factual record to enable the Court to evaluate the fairness and adequacy of this Settlement.  This

matter came before the Court on April 27, 2016, for a Final Approval Hearing pursuant to the

Court's Preliminary Approval Order dated October 21, 2015 (Dkt. 29).  The Court reviewed all

the filings related to the Settlement and heard argument on the Motion for Final Approval.

After careful consideration, the Court finds that the Settlement is fair, reasonable, and

adequate, and a satisfactory compromise of the Settlement Class Members' claims.  The Settlement

---

[1] This Order incorporates the definitions of terms used in the Agreement (Dkt. 28-1).

fully complies with Fed. R. Civ. P. 23(e), and, thus, the Court grants Final Approval to the Settlement and certifies the Settlement Class.

## BACKGROUND

### 1.      Factual and Procedural Background of the Action.

This case arises under a provision of the FCRA that requires a creditor to have a "permissible purpose" to obtain or use a consumer's credit report.  15 U.S.C. § 1681b.  Among other reasons, a creditor has a permissible purpose when it obtains a consumer's credit report to "review" the consumer's "account."  *Id.* § 1681b(a)(3)(A), (F)(ii).  Plaintiff Eva Marisol Duncan claims that JPMorgan Chase Bank, N.A. ("Chase") lacked a permissible purpose to obtain her credit report after the property securing her mortgage was foreclosed upon.  Plaintiff does not claim any actual injury:  Chase's credit pulls—known as "soft pulls"—are not visible to other creditors and have no effect on her (or any consumer's) credit score.  Instead, she contends that Chase's conduct was a "willful" violation of the statute, and she is therefore entitled to statutory damages.  *See* Compl. ¶ 42 (citing 15 U.S.C. § 1681n).  Plaintiff sues on behalf of herself and other Chase customers who she claims "no longer ha[d] accounts" with the bank when their credit reports were pulled.  Compl. ¶¶ 40-41.  As to each putative class member, Plaintiff seeks statutory damages, premised on the theory that Chase's credit pulls constituted willful violations of the statute.

Plaintiff filed her Complaint on October 16, 2014, and Chase answered on December 16, 2014 (Dkt. 7).  On April 21, 2015, the parties filed a Joint ADR Report (Dkt. 14) and moved to stay the case to pursue mediation.

### 2.      Settlement Negotiations and Proceedings.

The parties mediated the case on June 8, 2015 in San Francisco with the Honorable Magistrate Judge Edward A. Infante (Ret.), who has served as mediator in many consumer class

actions. After extensive negotiations at the mediation, the parties agreed to a settlement in principle. The parties engaged in further negotiations and confirmatory discovery, including a deposition of Chase's corporate representative in Dallas, and agreed to a final settlement in September 2015. The parties filed the Settlement with the Court on September 30, 2015 (Dkt. 28-1), and the Court granted preliminary approval on October 21, 2015 (Dkt. 29).

### a.      Notice Program.

The Settlement Administrator, Kurtzman Carson Consultants ("KCC"), implemented the Court-approved Notice Plan in accordance with the Agreement's requirements. *See generally* Geraci Decl. On December 18, 2015, over two million notices were mailed out to class members, and returned mail was re-mailed to new addresses if available. *Id.* In total, the Settlement Administrator estimates that at least 94% of the Class Members received actual mail notice. *Id.* Publication notice appeared in the December 28, 2015 issue of *People* magazine and in the January 2016 issue of *Better Homes and Gardens* magazine,[2] and the Settlement Website became accessible to the public on December 18, 2015. *Id.* In addition to the Court-approved Notice Plan, third-party websites that serve as repositories for information on class actions reported the Settlement and directed potential Class Members to the Settlement Website.[3]

### b.      Class Response to Notice Program.

472, 167 Settlement Class Members filed timely claims, yielding a claims rate of 22.28%, an extremely high participation rate for a consumer class action, *see* Bingham Decl. ¶ 10, and the highest participation rate of any FCRA account review class action, *see* Hervol Decl. ¶ 21. 172 Settlement Class Members opted out of the settlement, constituting .008116% of the class. The

---

[2] The December 28, 2015 issue of *People* magazine was available for purchase on December 18, 2015, and the January 2016 issue of *Better Homes and Gardens* magazine was available for purchase on December 20, 2015.

[3] *See, e.g.*, www.topclassaction.com; www.classactionrebates.com; www.classactionreporter.com.

names of those who opted out are appended herein as Exhibit A; these individuals are not bound

by this Order.  Six Settlement Class Members, or .000283 % of the class, filed timely objections.

In compliance with the Class Action Fairness Act ("CAFA"), the Consumer Financial

Protection Bureau ("CFPB") and the Office of the Comptroller of the Currency ("OCC") were

timely notified of the Settlement terms and provided with related documents.  See 28 U.S.C.

§ 1715(c)(1).  Neither the CFPB nor the OCC has objected to the Settlement.

### 3.    Summary of the Settlement Terms.

The Settlement's terms are set forth in the Agreement (Dkt. 28-1).  The Court now provides

a summary of the material terms.

### a.    The Settlement Class.

The Settlement Class is an opt-out class under Fed. R. Civ. P. 23(b)(3) of the Federal Rules

of Civil Procedure.  The Settlement Class is defined as:

> All persons who were borrowers or guarantors on a Chase account or Chase-serviced account and whose Consumer Report Information was accessed by Chase through an Account Review Inquiry during the period October 16, 2009 through October 16, 2014, at a time when the subject account met any one of the following criteria: (1) the account was closed with a zero balance; (2) the account had been sold or transferred to a third party; (3) the debt on the account had been discharged in bankruptcy; (4) Chase had foreclosed the property securing the account loan; or (5) Chase had sold in a short sale or had transferred through a deed in lieu of foreclosure the property securing the account loan.

Agreement ¶ 35.  "Excluded from the Class are all current Chase employees, officers and directors,

and the judge and magistrate judge presiding over this Action and their respective staff."  *Id.*

### b.    Monetary Relief for the Benefit of the Class.

Chase will pay $8.75 million into the Settlement Fund.  Agreement ¶ 58.  Each Settlement

Class Member who timely filed a valid claim will receive a monetary payment equal to a *pro rata*

share of the net Settlement Fund, minus administrative expenses, attorneys' fees, and the class

representative award.  If there are any funds from uncashed settlement checks, those funds will be

donated *cy pres*, half to the National Consumer Law Center ("NCLC") and half to the National Foundation for Credit Counseling ("NFCC") (Dkt. 33 ¶ 5).

### c.     Injunctive Relief for the Benefit of the Class.

For three years from Final Approval, Chase will conduct annual audits reasonably designed to confirm that Chase's periodic Account Review Inquiries exclude individuals who owe no debt to Chase, retain no interest in any property securing a debt owed to Chase, and have no other account with Chase.   Agreement ¶ 37.   This injunctive relief would be unavailable without a settlement as injunctive relief is not available under the FCRA in this Circuit.   *See Washington v. CSC Credit Servs*., 199 F.3d 263, 268 (5th Cir. 2000); *see also Garza v. Sporting Goods Properties*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *16 (W.D. Tex. Feb. 6, 1996) (An important part of the settlement value was defendant's agreement to change practices because "this Court may or may not have the power to grant the requested relief.").

### d.     Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released Chase from claims as set forth in the release in Section XIV of the Agreement.

### DISCUSSION

Federal courts have long recognized a strong policy and presumption in favor of class action settlements.   The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement."   *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).   "In evaluating a proposed class settlement, the Court will not substitute its business judgment for that of the parties; 'the only question ... is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"   *Jenkins v.*

- 5 -

*Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (quoting *McNary v. Am. Sav. and Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977)).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Id.* (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

As explained below, the Settlement here is more than sufficient under Rule 23(e).  The Settlement Class will receive a total cash value of $8.75 million to pay claims, fees, and costs, where the Settlement Class Members allege no actual injury and run the risk of recovering nothing. Moreover, Chase's agreement to conduct annual audits of its Account Review procedures provides the Settlement Class with meaningful protection from future Account Reviews Inquiries.  This prospective relief would have been unavailable absent this Settlement.

### 1.    The Court's Exercise of Jurisdiction is Proper.

In addition to having personal jurisdiction over the Plaintiff, who is a party to this litigation, the Court also has personal jurisdiction over all members of the Settlement Class because they have received the requisite notice and due process.  *See Richard v. Hoechst Celanese Chemical Group, Inc.*, 355 F.3d 345 (5th Cir. 2003) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)).  The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), and 28 U.S.C. § 1407.

### a.    The Best Notice Practicable Was Provided to the Settlement Class.

As discussed above, Notice of the Settlement in the forms approved by the Court was mailed to all Settlement Class Members whose addresses could be ascertained with reasonable effort.  The Settlement Administrator estimates that the direct mail program alone reached over 94% of the class members.  Geraci Decl. ¶ 16.  Notice of the Settlement was also published in

*People* magazine and *Better Homes and Gardens* magazine. *Id.* ¶ 10.   In addition, a special Settlement Website was established to enable Settlement Class Members to obtain detailed information about the Action and the Settlement. *Id.* ¶ 8.   Over 130,00 unique visitors viewed the Settlement Website. *Id* ¶17

> ### 2.   The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.

The Court-approved Notice[4] satisfies due process requirements because it described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).   The Notice, among other things, defined the Settlement Class; described the release provided to Chase under the Settlement as well as the amount, manner of allocating, and proposed distribution of the Settlement proceeds; and informed Settlement Class Members of their right to opt-out and object, the procedures for doing so, and the time and place of the Final Approval Hearing.   Geraci Decl. Ex A, B.   Further, the Notice stated that Class Counsel intended to seek attorneys' fees of up to 33.33% of the value of the Settlement. *Id.*   In addition to disclosing these material terms, the Notice informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could get more information—for example, at the website that posts a copy of the fully executed Agreement, as well as other important court documents such as the Motion for Service Award and Attorneys' Fees.

The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under all the circumstances, to apprise interested

---

[4] *See* Order (Doc. 29 at 10).

parties of the pendency of the settlement and afford them an opportunity to present their objections." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 940 (E.D. La. 2012) (quoting *Mullane*, 339 U.S. at 314), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). This Settlement was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. *Id*.

### 3. The Settlement is Fair, Adequate, and Reasonable, and Therefore Is Finally Approved Under Rule 23.

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate and reasonable, and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)). A settlement is fair, adequate, and reasonable when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Ford Motor Co. Bronco II Prods. Liability Litig.*, CIV. A. MDL No. 991, 1995 WL 222177, at *3 (E.D. La. Apr. 12, 1995) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)). In examining a proposed settlement, the court "must not try the case." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 654 (N.D. Tex. 2010) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). "[T]he very purpose of compromise is to avoid the delay and expense of such a trial." *Id*.

The Fifth Circuit has identified six factors, known as the "*Reed* factors," to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the probability of the plaintiffs' success on the merits;

(3) the range of possible recovery;

(4) the complexity, expense, and likely duration of the litigation;

(5) the stage of the proceedings and the amount of discovery completed; and

 (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

### a.     There Was No Fraud or Collusion.

"[C]ourts may presume a proposed settlement is fair and reasonable when it is the result of arms' length negotiations.  There is also a presumption of no fraud or collusion occurred [sic] between counsel, in the absence of any evidence to the contrary."  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing 4 Newberg on Class Actions §§ 11:41, 11:51 (4th ed. 2002)).  This Court has already concluded in preliminarily approving the Settlement that it is the "result of informed, good-faith, arm's length negotiations between the parties and their capable and experienced counsel and is not the result of collusion."  Dkt. 29 at 2.

### b.     Plaintiff Would Have Faced Significant Obstacles to Obtaining Relief.

"Once it has been determined whether the settlement is free of fraud or collusion, the most important factor in determining the fairness, adequacy, and reasonableness of the settlement is the likelihood of plaintiffs' success on the merits if the case were to proceed to trial."  *DeHoyos*, 240 F.R.D. at 287 (citations omitted).  "In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial."  *Id.* (citations omitted).

Plaintiff and Class Counsel would have faced several major risks in this litigation.  *First*, recent case law runs contrary to Plaintiff's position that if an account is foreclosed upon or discharged in bankruptcy, there is no longer a permissible purpose to review an account under the

FCRA.  *See Germain v. Bank of Am.*, No. 13-cv-767, 2014 WL 5802018, at *5 (W.D. Wis. Nov. 7, 2014) (after loan is discharged in bankruptcy, "the consumer is not personally liable for the loan, but he or she still 'owes' the lender in the form of the property (the collateral)"), *reconsideration denied*, 2015 WL 471704 (W.D. Wis. Feb. 5, 2015); *Saumweber v. Green Tree Servicing, LLC*, No. 13-cv-3628, 2015 WL 2381131, at *4 (D. Minn. May 19, 2015) ("[Plaintiffs] had an obligation to Defendant to make payments on the mortgage, even after bankruptcy proceedings were concluded, or face foreclosure. . . .  Accordingly, an account—and a credit relationship between the parties—existed for purposes of the FCRA."); *see also Germain*, 2014 WL 5802018, at *9 (observing that the question whether putative class members "[w]ere...contesting foreclosure" is one of the individualized inquiries that precludes class certification in FCRA account review cases).

*Second*, when the parties reached a final agreement in September 2015, it was possible that a decision from the U.S. Supreme Court in *Spokeo, Inc. v. Robins* would entirely foreclose Plaintiff's lawsuit.  *Spokeo* presented the question of whether a violation of the FCRA that causes the consumer no actual injury but nonetheless entitles him to statutory damages can confer Article III standing.  *See* 135 S. Ct. 1892 (2015).  Facing a decision to be issued no later than June 2016, the parties recognized that a ruling in Spokeo's favor could moot any effort Plaintiff or her counsel had expended to that point.

*Third*, the FCRA allows for statutory damages only upon a showing of willfulness.  The Supreme Court has made clear that there can be no willful violation of the FCRA—a "less-than-pellucid" statute—unless a decision of a court of appeals or "authoritative guidance" from a responsible federal agency clearly prohibits the challenged conduct under the statute.  *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69-70 & n.20 (2007).  No appellate authority and no

agency rule or guidance addresses the permissibility of pulling consumer credit reports in the circumstances implicated here.  Indeed, in rejecting a willfulness claim like Plaintiff's, the sole court of appeals decision directly relevant here observed that the FCRA's permissible-purpose provision does not distinguish between closed and open accounts.  *See Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-1319 (11th Cir. 2009); *see also Wilting v Progressive Cty. Mut. Ins. Co.*, 227 F.3d 474, 476 (5th Cir. 2000); *Banga v. Experian Info. Solutions, Inc.*, 473 F. App'x 699 (9th Cir. 2012).

*Fourth*, even if Plaintiff could have prevailed on her theories—and foreclosure or bankruptcy discharge could in certain instances terminate the so-called "credit relationship" allowing the bank, under the FCRA, to review its customers' credit information—individual questions would have remained that had the potential to undermine class certification—for example, whether the bankrupt mortgagor was still making payments on the loan or still living in the property securing the mortgage; whether the mortgagor contested the foreclosure; and what state law remedies remained open to the bank after the foreclosure sale.  *See Germain*, 2014 WL 5802018, at *9-10.

The combined risks here were real—and potentially catastrophic for the Settlement Class.  Absent this Settlement, this litigation likely would have continued, at tremendous expense to the Parties, with several junctures at which Plaintiff's claims could have been completely extinguished.  Given the myriad risks attending these claims, the Settlement is a fair compromise.

### c.	The Benefits Provided by the Settlement Are Fair, Adequate, and Reasonable When Compared to the Possible Range of Recovery.

In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the maxim that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

grossly inadequate and should be disapproved." *DeHoyos*, 240 F.R.D. at 309 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 445 (2d Cir. 1974)). "[T]he Court must consider . . . whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation[,]" *id.* at 290, keeping in mind that "compromise is the essence of settlement," *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 850 (E.D. La. 2007).

The Settlement, the largest for account review soft credit pulls in the history of the FCRA, provides substantial value to the Settlement Class. Under the Settlement here, Plaintiff and the Settlement Class will receive $8.75 million in cash to pay claims, attorneys' fees, and administration costs, plus injunctive relief, establishing audit procedures of Chase's account review practices for three years. Upon proof of a willful violation of the FCRA, the range of statutory damages is $100 to $1,000. With approximately 2.2 million class members, the range of recovery if Plaintiff were to prevail in this case is $220 million to $2.2 billion. However, as discussed above, Plaintiff's path to victory is fraught with formidable legal challenges, and there is a serious risk that the Settlement Class Members could receive nothing if they pursue this litigation. Given such long odds, "there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (quoting *Grinnell*, 495 F.2d at 445). Thus, this Settlement is fair in light of the potential risk-weighted range of recovery.

### d. The Settlement Will Avert Years of Highly Complex and Expensive Litigation.

This case involves over two million Settlement Class Members and alleged statutory damages in the hundreds of millions or billions of dollars. The claims and defenses are complex. *See, e.g.*, *White v. Experian Info. Solutions*, No. 05-cv-2070, 2014 WL 1716154, at *16 (C.D. Cal. May 1, 2014) ("The FCRA, particularly in the class action context, is a complex and challenging

area of law.").  Although this litigation has been pending for over a year and a half, recovery by any means other than settlement would require additional years of litigation in this Court and others, including appellate courts (assuming this case is not disposed of by an adverse ruling in *Spokeo*).

The Settlement provides immediate and substantial benefits to over two million Chase customers.  *See Jenkins*, 300 F.R.D. at 303 ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").  "Particularly because the demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement, there can be no doubt about the adequacy of the present Settlement."  *Jenkins*, 300 F.R.D. at 303.  The amount of recovery is eminently reasonable considering the potentially fatal risks Plaintiff faced in continuing to litigate this case.

> **e.    The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Concerning the Settlement.**

The Court considers "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating."  *Jenkins*, 300 F.R.D. at 303-04 (quoting *Moore v. Halliburton Co.*, No. 3:02-cv-1152-M, 2004 WL 2092019, at *7 (N.D. Tex. Sept. 9, 2004)).  "At the same time, the law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  *Id.* (quoting *Ressler v. Jacobson*,

822 F. Supp. 1551, 1555 (M.D. Fla. 1992)).  In fact, a settlement can be approved even if the parties have not conducted formal discovery.  *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 639; *see also Jenkins*, 300 F.R.D. at 304; *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 432 (S.D. Tex. 1999).  And information obtained in prior litigation can serve as the basis for an informed settlement.  *See San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999); *DeHoyos*, 240 F.R.D. at 292.

One of Class Counsel, Mr. Hervol, had previously represented plaintiffs suing a Chase entity under the same theory in *Sleezer v. Chase Bank USA, N.A.*, No. 7-cv-961 (W.D. Tex.).  *Sleezer* enabled Class Counsel to anticipate Chase's defenses in this case, both on the merits and on class certification, having seen the defendant's motion for partial summary judgment and informally advanced positions on class certification in *Sleezer*.  *See* Hervol Decl. ¶ 18.  In the course of this litigation, the Parties exchanged additional information through voluntary production prior to mediation.  *Id.*  After reaching a settlement in principle, Plaintiff obtained further confirmatory discovery, including a deposition of Chase's corporate representative, to confirm the facts relied upon in reaching a settlement.  Through prior litigation and discovery in the case, Plaintiff developed an adequate factual understanding to engage in informed settlement negotiations.

> **f.    The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Strongly Favor Approval of the Settlement.**

In "evaluating the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Id.*  Class Counsel and Plaintiff believe that this settlement is deserving of Final Approval, and the Court agrees.  Furthermore, the Court

finds it telling that, of the 2.2 million Settlement Class Members, only 172 elected to exclude themselves from the Settlement, and only six filed objections to the Settlement. *See, e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 150 (E.D. La. 2013) ("[C]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections.") (citing cases); *see also Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (upholding district court's approval of class settlement with 45 objections and 500 opt-outs for a class of 150,000).

### 4.    The Settlement Class Satisfies the Requirements of Rule 23.

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action and certified this Settlement Class, which is defined above in this Order as well as in paragraph 35 of the Agreement.  (Dkt. 28-1 ¶ 35.)  The Court hereby reiterates its findings that: (a) the Settlement Class Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the representative Plaintiff are typical of the claims of the Settlement Class; (d) the representative Plaintiff and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

The individuals listed in Exhibit A to the Final Judgment being entered contemporaneously herewith elected to opt out of the Settlement.  The Court therefore finds and decrees that they are not part of the Settlement Class, are not bound by the Settlement or release contained therein, and will not receive any distribution from the Settlement Fund.

### CONCLUSION

For the foregoing reasons, the Court:  (1) overrules all objections and grants Final Approval to the Settlement; (2) appoints Plaintiff Eva Marisol Duncan as class representative for this

Settlement; (3) appoints as Settlement Class Counsel the law firms and attorneys listed in paragraph 12 of the Agreement; (4) directs Settlement Class Counsel, Plaintiff, and Chase to implement and consummate the Settlement pursuant to its terms and conditions; (5) retains continuing jurisdiction over Plaintiff, the Settlement Class, and Chase to implement, administer, consummate and enforce the Settlement and this Final Approval Order; and (6) will separately enter Final Judgment dismissing the Action with prejudice.

It is so **ORDERED.**

**SIGNED** _____, 2016.

_____
**JUDGE FRED BIERY**
**UNITED STATES DISTRICT JUDGE**
**WESTERN DISTRICT OF TEXAS**

cc:  All Counsel of Record

# EXHIBIT "A"

| ClaimID | Last Name | First Name |
|---|---|---|
| 10004430001 | ABNEY | JOEY M |
| 10023114701 | ALBARADO | MONA A |
| 10025547401 | ALBU | DANIEL N |
| 10375829001 | AMOS | CONSTANCE |
| 10068599701 | ANGELINA | FOMIN |
| 10079197901 | ANTONIO | ALBORNOZ |
| 10090024001 | ARMSTRONG | VIVIAN M |
| 10091533401 | ARNOLDO | ARGUELLO |
| 10098708401 | ATCHISON | JUDY |
| 11262694401 | BARATI | MASSOUMEH |
| 10148397101 | BELACK | LINDA J |
| 10149874301 | BELL | GREGORY W |
| 10153148501 | BEN-DROR | LISA |
| 10168247501 | BEVERE JR | JOHN P |
| 10760560001 | BLOCK | H PAUL |
| 10235693201 | BROWN | VAN R |
| 90000029601 | BRYAN | PEGGY |
| 10241659001 | BRYANT | JENNIFER L |
| 10263644801 | CALABRESE | ROBERT E |
| 10301458501 | CASTILLO | ROXANA |
| 10307318801 | CECELIA | SENN |
| 10311933401 | CHAD | WHITE |
| 10329267601 | CHICHESTER | NEOMA A |
| 10333823801 | CHRIS | THOMPSON |
| 10350641001 | CLARK | MICHAEL J |
| 10358225301 | CLIVENS | GOLDMAN |
| 10369166201 | COLLINS | VERONICA R |
| 10381953801 | COPE | BONNIE LEE |
| 10384943901 | CORLEY II | THOMAS F |
| 10389382901 | COSTELLO | SANDRA J |
| 10395333401 | CRAFT | JOSHUA R |
| 10397007101 | CRAIN JR | GEORGE C |
| 10404244801 | CROW | BERNICE M |
| 10407982401 | CUBBERLY | ANTOINETTE M |
| 10407984801 | CUBBERLY III | HOWARD G |
| 10409931801 | CUMMINS | CONSTANCE |
| 10431435701 | DAPHNE | MARTIN |
| 10473469301 | DEMPSKI | LINDA L |
| 10492689201 | DIETZ | TERRI A |
| 10515950501 | DOUGLAS | SNYDER |
| 10547134301 | EGLICK | PETER J |
| 10558747301 | ELLIS | BARBARA A |
| 10565933201 | ENES | CAROLYN J |
| 10565935601 | ENES | GREGORY J |
| 10575590401 | ERNST | JOHN R |
| 10582609101 | ESTATE OF HOWARD W CROW | |
| 10600822501 | FAMIGHETTE | JOSEPH G |
| 10154135101 | GARCIA | BENITO |

| | | |
|---|---|---|
| 10677058501 | GARRISON | SHIRLEY R |
| 10708964601 | GLENN JR | JOHN F |
| 11233961001 | GLEWEN | MARISSA RUTH |
| 10733285101 | GRAY | CHARLOTTE J |
| 10736511001 | GREEN | ROBERTA M |
| 10744054401 | GRIFFIN | LESLIE R |
| 10748687801 | GROVER | FRANK MATTHEW |
| 10773337701 | HAMPTON | REEDA D |
| 11767910001 | HANISCH | SHAWNA |
| 10778121901 | HANSON | ANITA RAE |
| 10790365901 | HARTLEY | DAWN M |
| 10800427201 | HEAD | JAMES CODY |
| 10805259001 | HEFLIN | BRIAN S |
| 10806884501 | HEINS | ELAINE M |
| 10806892401 | HEINS | MATTHEW A |
| 10807436501 | HELBIG | MICHAEL H |
| 10811134901 | HENDERSON | RICKY A |
| 10828554601 | HILDA | ASTERN |
| 10865098401 | HULLINGER | SCOTT |
| 10928337501 | JENNIFER | BROWN |
| 10937726601 | JESSEY | NICOLE A |
| 10942388401 | JILL | THOMPSON |
| 10956272001 | JOHN | STEVERSON |
| 10961473201 | JOHNSON | FLOYD A |
| 10963877301 | JOHNSON | LORNELL M |
| 10970559201 | JONATHAN | ELLIS |
| 11004005301 | JUNG | KAREN |
| 11028136601 | KEITH | PATRICIA A |
| 11031343401 | KELLY | CAROLYN P |
| 11036403001 | KENNEDY | MELVENE L |
| 10452233101 | KESLER | DAWN |
| 11658373301 | KESLER | ROGER |
| 10994224301 | KLECKNER | JOYCE FAIRY |
| 11086394001 | KUSION | PIOTR |
| 12078993001 | KUSION | WIOLETTA |
| 11102824301 | LARIVIERE | ADRIAN L |
| 11103065101 | LARMOUR | DAVID W |
| 11112588101 | LAVERNE | EDGAR |
| 11112693901 | LAVERY | MICHELLE R |
| 11154552301 | LISA | DOUGHERTY |
| 11160677901 | LLOYD | ROBERT A |
| 11166292801 | LONGMIRE SR | ROYCE E |
| 10554943501 | LOTT | ELIZABETH |
| 11235654001 | MARK | FURMAN |
| 11239043201 | MARKS | JOSEPHINE M |
| 11245489601 | MARTHA | VELEZ |
| 11253185401 | MARTINEZ | PEDRO A |
| 11289172001 | MCGEADY | MARIANNE |
| 11295423601 | MCKOWN | YVONNE M |

| 11297805801 | MCMILLIAN | SHERRELL A |
| 11298373001 | MCNAIR'BEY | LUECRETIA D |
| 11309334201 | MELISSA | LASKOWSKY |
| 12114337501 | METCALF | ZELNA |
| 11364163101 | MONICA | NEILSON |
| 11380575501 | MORRIS | RUSSELL A |
| 11402224001 | NAKAMURA | ELLEN K |
| 11458481301 | ONORATO | GREGORY W |
| 11497239401 | PATTRIN | FAITH B |
| 11521381801 | PETERKIN | CRAIG L |
| 11522314901 | PETERSEN | JOAN M |
| 11787727001 | PODOLSKY | SIMCHA |
| 11558260501 | PROBST | TERESA J |
| 10881202901 | QUAYE | IRENE |
| 11584223801 | RASCHE | WILLIAM |
| 11589726401 | RAYMOND | THOMAS R |
| 11596126401 | REED | VALERIE P |
| 11603698901 | RENEE | FOLTZ |
| 11610855101 | RHONDA | ABNEY |
| 90000013201 | RICE | JASON CURTIS |
| 90000014401 | RICE | TRACY LYNN |
| 11614273001 | RICHARD | ADAMS |
| 11667543301 | RONEY | MICHAEL D |
| 11696087501 | RYMEL | JASON D |
| 11715964501 | SANDS | NICHOLAS J |
| 11727191301 | SCALISE | ANTHONY J |
| 11742680501 | SCOTT | HEATHER M |
| 90000033801 | SCOTT | RUEL |
| 11747059401 | SEAN | BATTLES C |
| 11747914701 | SEARCY | MINNIE G |
| 11753044001 | SENN | ANDREW B |
| 11765008001 | SHARP | PEGGY C |
| 11775812701 | SHERYL | HADLEY |
| 11782077501 | SHULMAN | MINDY MAY |
| 11783745301 | SIDORSKY | RONALD M |
| 11811151601 | SMITH | WARREN L |
| 11811377001 | SMITH | WILMA J |
| 11813598301 | SNEAD | MYRNA M |
| 11816782001 | SOHRABI | RAY M |
| 11818953001 | SOMMER | BILLIE C |
| 11830208501 | SPRATT | JAMES |
| 11835450401 | STAMPS | ELIZABETH L |
| 11835453001 | STAMPS | JAMES A |
| 11838869101 | STARR | HOWARD E |
| 11841250401 | STEFANIE | NAIFEH |
| 11845951001 | STEPHEN | KOLHAGEN |
| 11846441301 | STEPHEN | SCAGLINE |
| 11860908701 | STOUT | MARTHA L |
| 11862252301 | STRATTON | DAWN G |

| | | |
|---|---|---|
| 11425838701 | SULLIVAN | NICHOLE |
| 11879006701 | SWAIN | MARY L |
| 11883947001 | SYRJALA | HEATHER L |
| 11886800701 | TAKAHASHI | SHARON L |
| 11892713901 | TARANEH | VESSAL |
| 11921149001 | THOMPSON | JOHN B |
| 10209899201 | TILBY | BRANDON |
| 11930981601 | TINA | CHAVES |
| 11936772501 | TOMA | ANCUTA |
| 11938619701 | TONEY | JOHN M |
| 11971940001 | TONEY | VALERIE |
| 11939993301 | TONYA | NEUMAN |
| 11983344001 | VEGA | VALERIE A |
| 11983542301 | VEITCH | GRACE G |
| 12001731301 | VO | MONG V |
| 12009695001 | WALKER | CLINTON R |
| 12023509201 | WASIK | STEVEN P |
| 10279756001 | WATSON | CARLETON SAMUEL |
| 12027704901 | WAYNE | GUYER |
| 60013804501 | WEDGEWORTH IV | JOHN BERTUS |
| 12035117101 | WELCH | PAUL |
| 12054817301 | WILHELMI | JODI L |
| 12066941901 | WILLIAMS | STEPHEN L |
| 12085216001 | WOOD | KRISTA |
| 12100374701 | YERKEY | JANIS K |
| 10802779001 | YORTY-GOSNICK | HEATHERLEE |
| 12106108501 | YOUNG | SHIRLEY M |
| 12116750101 | ZIMMERMAN | BRANDON C |
| 12118312901 | ZOLLENHOFFER JR | WILLIAM B |