**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **EVA MARISOL DUNCAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:14-cv-00912-FB-** |
| | § | **JWP** |
| **JPMORGAN CHASE BANK, N.A.,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

<u>**PLAINTIFF'S RESPONSE TO ATTORNEY OBJECTIONS**</u>
<u>**(Doc. 30 and 36)**</u>

**TO THE HONORABLE MAGISTRATE JUDGE JOHN W. PRIMOMO:**

Now comes Eva Marisol Duncan (hereinafter referred to as "Plaintiff"), on behalf of herself and others similarly situated, by and through their attorneys, who file this response to the two attorney objections docketed herein at 30 (Cox) and 36 (Bandas/Jabrani) and show:

1.      This Settlement is a culmination of extensive arm's-length negotiations between Plaintiff and Chase, including a formal mediation session before the Honorable Magistrate Judge Edward A. Infante (Ret.), who has served as mediator in many consumer class actions.  On October 21, 2015, this Court granted Plaintiff's Motion for Preliminary Approval and "preliminarily approve[d] the Settlement . . . as fair, reasonable, and adequate." (Doc. 29.)  The Court further found that "the Settlement was reached in the absence of collusion, and is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel." *Id.*  Under the terms of the Settlement Agreement, Chase committed to pay $8,750,000 into a non-reversionary Fund.

2.      Direct mailed notice was delivered to 94% of the over 2.1 million class members identified through Chase's available records, all of whom were able to file claims by signing,

dating, and returning a prepaid postcard Claim Form.  Declaration of Jay Geraci ¶ 16 (Doc. 57-5).  Only 172 Class Members had timely opted out of the Settlement as of April 13, 2016 (.008% of the Settlement Class), *id.* ¶ 19, and only five Objections from Class Members remain outstanding (Doc. 30, 36, 39, 46, 49).  In addition, 472,167 claims have been filed, representing 22% of the Settlement Class and showing extraordinary support for the Settlement.  *Id.* ¶ 20.

## CURRENT STATUS OF OBJECTIONS

3.     Two professional serial objectors, Christopher Bandas and Thomas L. Cox, Jr., in an apparent attempt to extract fees for themselves, are attempting to block payment to over 472,000 class members by filing meritless objections to the proposed settlement in this case. Both Mr. Bandas and Mr. Cox are lawyers, licensed in Texas, with long histories of meritless objections.

4.     The other attorney or attorney-assisted objections filed in this case have been withdrawn with Court approval or stricken.[1]

## THE OBJECTORS

5.     Federal courts consider the source of objections made.  That is, when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than advancement of the interests of the class members.  The Federal Judicial Center has thus warned courts to "[w]atch out ... 'for canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.'"  Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for

---

[1] With Court approval, the attorney-assisted objections at Doc. 35 and 37 have been withdrawn without payment to the objectors or their counsel, and the attorney-assisted objection at Doc. 38 has been stricken. A separate response is made to the *pro se* filings appearing as Doc. 34, 39, 41, 46, and 49.

<u>Judges</u>, at 11 (2005) (quoting ***Shaw v. Toshiba Am. Info. Sys., Inc.***, 91 F. Supp. 2d 942, 973 (S.D. Tex. 2000)). Other courts have not been so gentle, describing professional objectors as "remoras." ***In re UnitedHealth Group PSLRA Litig.***, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009). This Court has said that to allow the objectors to "disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process." ***De Hoyos v. Allstate Corp.***, 240 F.R.D. 269, 294 (W.D. Tex. 2007).

6.      One court summed up the standard serial objector scheme as follows:

"Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing." ***Barnes v. FleetBoston Fin. Corp.***, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006).

7.      Another court described the common strategy of serial objectors:

"'The unfortunate game is to lodge *pro forma* objections at the trial stage, then negotiate a private resolution in order to drop the invariable notice of appeal. Once the case has progressed beyond the trial court, there is no longer any accountability for side payments to objectors' counsel, and the game is on.'"

***Torres v. Bank of Am. (In re Checking Account)***, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) (internal citations omitted); *see also* Fitzpatrick, <u>The End of Objector Blackmail</u> 62 Vand. L. Rev. 1623 (2009); <u>The Ted Frank Interview</u> at: <u>http://blogs.reuters.com/alison-frankel/2015/06/25/the-ted-frank-interview-i-was-doing-it-for-the-greater-good/</u> (exposing backstory of Mr. Bandas and another professional objector, Ted Frank); and <u>Exposing Class Action Objectors: Lieff Cabraser, Ted Frank in 'lurid' dispute</u>, (revealing connection between

two professional objectors, Mr. Bandas and Ted Frank) http://blogs.reuters.com/alison-frankel/2015/06/22/exposing-class-action-objectors-lieff-cabraser-ted-frank-in-lurid-dispute/'.

8.      The serial objectors in this case are Mr. Bandas, representing Mr. Jabrani, and Mr. Cox, an attorney acting *pro se*.

**Christopher ("Chris") Bandas**.  "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."
***In re Cathode Ray Tube (CRT) Antitrust Litig.***, 281 F.R.D. 531, 533 (N.D. Cal. 2012).

(a).      In 2013, The Federal Judicial Center identified Mr. Bandas as one of the country's most prolific objectors' counsel, with his name appearing over 100 times in a study of just three judicial circuits.  *See* Appx. 1, Ex. A. (also name/word searchable at http://www.fjc.gov/public/pdf.nsf/lookup/class-action-objector-appeals-leary-fjc-2013.pdf/$file/class-action-objector-appeals-leary-fjc-2013.pdf      Mr. Bandas is also ranked #1 on the serialobjector.com index: https://www.serialobjector.com/persons.[2]  The number of cases in which he has appeared is too numerous to count, but certainly approaching 200 objections by now.

(b).      Mr. Bandas's authorization to practice law in the Western District of Washington has been revoked as a sanction for his conduct.  ***Dennings v. Clearwire***, 2:10-CV-01859 (W.D. Wash.) (Doc. 166). See minute entry from Pacer docket sheet, Appx. 1, Exh "B".

(c).      The Honorable Barry Ted Moskowitz of the Southern District of California conducted an evidentiary hearing regarding Mr. Bandas's practices in order to

---

[2] Serialobjector.com is a website that appears to compile information and links to court filings in class

determine whether to strike an objection.  After hearing testimony from Mr. Bandas and other witnesses, he struck the objection, having determined that **"Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away"** and that **"Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made."**  *In re Hydroxycut Marketing and Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 133413, at *71 (S.D. Cal. Sept. 17, 2013).  The testimony was summarized by Judge Moskowitz: "Accordingly, Mr. Reid [an attorney hired by the defendant to attempt to mediate a settlement] contacted Mr. Bandas and spoke with him on the telephone on or about April 22, 2013.  Mr. Bandas assured Mr. Reid that he spoke for himself and [another professional objector] and would make sure that [the other objector] would get his cut of any settlement payment.  When Mr. Reid asked Mr. Bandas what his issues were with the proposed settlement, **Mr. Bandas said that he didn't care about changing one word of the settlement and that he filed the objections because it was a large settlement and Plaintiff's counsel stood to make millions of dollars**.  **Mr. Bandas said that he was willing to wager that Mr. Reid's client would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away - otherwise, he could hold the settlement process up for two to three years through the appeal process**."  *Id.* at *69-70 (emphasis supplied, record cites omitted).

9.     Mr. Bandas is himself rarely a member of the class whose settlement he challenges.  To establish standing to object, then, Mr. Bandas has used Mr. Jabrani and/or his wife, Janet, who reside in Missouri, in at least the following class actions settlement cases:

---

action cases involving repeat class action objectors.

a.      *In re CertainTeed Fiber Cement Siding*, MDL No. 11-2270 (E.D. Pa.), *In re Certainteed Fiber Cement Siding Litig.,* 303 F.R.D. 199, 210 (E.D. Pa. 2014*)* ("It is also worth noting that when asked at their depositions whether they had ever reviewed the settlement agreement or calculated how much they would receive from the settlement, both Amirali and Janet Jabrani testified that they had not.") In the case, the Bandas/Jabrani objections were overruled, a notice of appeal was filed, and the appeal was dismissed after plaintiff's counsel filed a motion for summary affirmance. The appellate record does not indicate whether Bandas or the Jabranis received a payment after the appeal had been noticed.   In his deposition taken pursuant to this Court's Order, Mr. Jabrani acknowledged participating in a settlement, but would not divulge the exact amounts paid to him and Mr. Bandas.

b.      *Hamilton v. Suntrust Mortgage, Inc*. 0:2013-cv-60749 (S.D. Fla.), objection overruled, notice of appeal filed, docketed as 14-14892; appeal dismissed before Bandas/Jabrani filed brief. The record does not indicate whether Bandas or Jabrani received a payment after the appeal had been noticed; however, Mr. Jabrani also acknowledged participating in a settlement of this matter without disclosing terms.

c.      *Fladell v Wells Fargo Bank* 13-cv-60721 (S.D. Fla.), objection overruled, notice of appeal filed, appeal docketed as 14-15000, dismissed before appellate brief filed. The record does not indicate whether Bandas or Jabrani received a payment after the appeal had been noticed; however, Mr. Jabrani also acknowledged participating in a settlement of this matter without disclosing terms.

d.      *Wilson v. Everbank* 14-cv-22264 (S.D. Fla.), objection overruled, notice of appeal filed, appellants' brief filed March 23, 2016, in appeal 16-10657.

       e.      ***Allen v. JPMorgan Chase Bank*** 1:13-cv-08285 (objection withdrawn after Janet Jabrani's deposition noticed).

10.     Mr. Jabrani's deposition was taken on April 19, 2016 in this case pursuant to this Court's Order. (Doc. 51).   Among the details of the deposition are the following:

       a.      Mr. Jabrani admitted that Mr. Bandas wholly drafted the objection he filed, and that Mr. Jabrani simply signed it and mailed the objection to the court and counsel.

       b.      Mr. Jabrani has never personally met Mr. Bandas.  He first hired Mr. Bandas when he saw an advertisement on Facebook seeking objectors to the *CertainTeed Fiber Cement Siding* class action settlement.  Mr. Jabrani admitted that he has sent all but one of the class action settlement notices he has received since then to Mr. Bandas, and that Mr. Bandas has drafted objections for him to file *pro se* as to each such class action settlement.

       c.      While Mr. Jabrani complained about the adequacy of compensation he would receive under the settlement, he was not even aware of what that amount would be.  Nor was Mr. Jabrani aware of any of the profound risks of, or difficulties in, prosecuting this case, either as to liability or class certification.  In short, his testimony confirmed that his objection is a mere form objection generated by serial objector Bandas, and not a genuine objection. (For reasons explained below, even were it genuine, it is not well taken.)

       d.      Mr. Jabrani asserted that a $220 million settlement in this case would be the minimum that should be considered adequate.

       e.      Mr. Jabrani could not identify a single benefit that his objections have

garnered for the classes in the cases in which he has filed objections, nor a single improvement to the settlement terms that such objections have fostered.

Because the deposition was just taken yesterday, Plaintiff will file a supplement to this Response with the actual transcript of the deposition.

**Thomas L. Cox, Jr.**   Mr. Cox is another professional serial objector, mentioned frequently in the Federal Judicial Center Study, *see supra*, and ranked #8 on the serialobjector.com index.   Mr. Cox files boilerplate objections, often for his own family members or his former law partner's family, and lodges a notice of appeal before he settles his objections.   His objections have repeatedly been called "meritless" or "without merit."   *See, e.g.*, *In re Mut. Funds Inv. Litig.*, 2011 U.S. Dist. LEXIS 31787 at *33 & n.1 (D. Md. Mar. 23, 2011) (repeatedly describing Cox's objections as "without merit" and noting "Clifton brings this objection by and through her attorney, Thomas L. Cox, Jr.  It appears that Mr. Cox is a frequent and professional objector, as he has objected or represented objectors in at least six other class actions since 2010").   In addition to the *Mutual Funds* case, Mr. Cox has appeared as an objector or objector's counsel in at least the following cases:

- *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 *6-7 (W.D. Wash. Sept. 17, 2012). ("After careful consideration, the Court finds that these objections are **meritless** and they are hereby overruled.") (representing Sara Sibley);

- *Fraley v. Batman*, No. 13-16819, No. 13-16918, No. 13-16919, No. 13-16929, No. 13-16936, No. 13-17028, No. 14-15595; *Fraley v. Batman,* 2016 U.S. App. LEXIS 518 (9th Cir. Jan. 6, 2016) (representing Tracy Cox, Katie Sibley in 13-17028);

- *Nakash v. NVIDIA Corp. (In re NVIDIA GPU Litig.)*, 539 Fed. App'x 822 (9th Cir. Sept. 4, 2013);

- *Kolinek v Walgreen Co*, 13-cv-04806 (N.D. Ill.) (representing Paige Nash and Gary Sibley);

- ***In re Groupon, Inc***., 2012 U.S. Dist. LEXIS 185750 (S.D. Cal. Sept. 28, 2012) (representing his daughter, Tracey Cox Klinge, "Jordan (sic) Echols" (who shares Cox's address) and others);

- ***Smith v. Intuit***, 5:12-CV-00222-EJD (N.D. Cal.) (representing the objector "Jordon (sic) Echols", who had the same address as Mr. Cox);

- ***In re: Pre-Filled Propane Tank Marketing and Sales Prac. Litig. (Amerigas Settlement).*** LEXIS 185750 (S.D. Cal. Sept. 28, 2012) (representing Kristina Newman);

- ***Sobel v. Hertz Corp***., 3:06-cv-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. June 27, 2011) (representing Paige Nash);

- ***In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig***., MDL No. 08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11, 2010) (representing Sara Sibley);

- ***In re Apple iPhone Prods. Liab. Litig.*** 5:10-MD-02188-RMW (N.D. Cal.) (representing Paige Nash, Katie Sibley, Warren Sibley (and others));

- ***In re Lifelock Inc., Marketing and Sales Practice Litigation***, MDL No. 08-1977-PHX-MHM, 2009 U.S. Dist. LEXIS 130075 (D. Ariz. July 24, 2009) (representing Tracy Cox Klinge and Kris Klinge);

- ***In re: Google Buzz User Privacy Litigation***, 10-CV-00672-JW (N.D. Cal.) (representing Warren Sibley, Brent Clifton);

- ***Dewey v. Volkswagen of Am***., 728 F. Supp. 2d 546 (D.N.J. 2010) (representing David Stevens);

- ***In re: AT&T Mobility Wireless Data Services Sales Tax Litigation***, 1:10-cv-02278 (N.D Ill.) (representing Travis Cox);

- ***In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig***., 733 F. Supp. 2d 997 (E.D. Wis. 2010) (Thomas L. Cox, Jr. *pro se*);

- ***In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig***., MDL No. 08-1998, 2010 U.S. Dist. LEXIS 131775 at *20 (W.D. Ky. Dec. 13, 2010) (representing Patrick or Patricia Baker);

- ***HP Laserjet Printer Litig.,*** SA CV 07-0667 (C.D. Cal.) (representing Gary Sibley);

- *In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practice Litig.*, No. 1:09-md-2023 (E.D.N.Y. Apr. 14, 2009) (representing Shelly Stevens).

11.    Mr. Cox was deposed in this case.  He knew virtually nothing about the FCRA, and has never reviewed the *Safeco*,[3] *Wilting*,[4] *Levine*,[5] and *Spokeo*[6] decisions that form the backdrop against which this case would be litigated (*see* Motion for Final Approval, Doc. 57, pp.14-20), yet complains that the settlement relief in this case is inadequate.

12.    Although he has filed numerous notices of appeal after class action settlement are approved over his objection, a PACER search reveals no instance when Mr. Cox has actually filed a brief on the merits in a federal appellate court.

## THE "MERITS" OF THE OBJECTIONS

13.    As to the "merits" of the objections, Cox and Bandas make the same generalized objections[7] that they have often made before, summarized as (1) objection that the class relief is inadequate, (2) class counsel and the class representatives are inadequate; (3) the injunctive relief is inadequate; (4) the proposed *cy pres* distribution is inadequate; and (5) the requested attorneys' fees are more than adequate.  Mr. Cox also asserts that the settlement is not fair because it does not allow for mass opt-outs and an optional termination provision[8] was not disclosed to class

---

[3] *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).
[4] *Wilting v Progressive Cty. Mut. Ins. Co.*, 227 F.3d 474 (5th Cir. 2000).
[5] *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009).
[6] *Spokeo, Inc. v. Robins*, 135 S. Ct 1892 (Apr. 27, 2015).
[7] Marilyn Paul's now stricken attorney-assisted objection asserts many of the same "objections" as does the Bandas and Cox objections. The only different objection that Ms. Paul made was that there should have been notice provided to the class through a "massive media publication."  With a 94% direct mail reach, two publication notices in widely circulated national publications, and more than a 22% claim rate, the highest known claim rate in a consumer class action case, if Ms. Paul's "objection" were to be considered, it would certainly be meritless.
[8] The optional termination provision, sometimes called a "blow provision," provides a settling defendant with the option to terminate the settlement if there are more than a certain number of class members who exclude themselves from the settlement (i.e. "opt-out"). The provision protects the defendant from settling with the class, but still facing, for example, hundreds or thousands of lawsuits brought by those who have opted out of the settlement class.

members.   Mr. Bandas also objects to the use of a claims procedure, instead of simply sending money to class members—without any verification by the class member, through a claim, of the address to which any payment should be made—an objection Mr. Bandas has made before, and which has been repeatedly overruled.[9]

14.   A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  A district court has broad discretion to approve a class-action settlement under Rule 23(e).  *DeHoyos v. Allstate Corp. et al.*, 240 F.R.D. 269, 285-87 (W.D. Tex. 2007).  In examining a proposed settlement, the court "must not try the case."  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 654 (N.D. Tex. 2010) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).  Rather, the inquiry is confined to assessing the fairness, reasonableness, and adequacy of the proposed settlement because the "very purpose of compromise is to avoid the delay and expense" of a trial.  *Id.*  "The Rule 23(e) analysis should be 'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement.'"  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982)).  Moreover, when "evaluating the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to

---

[9] *See* **Wilson v. Everbank**,  2016 U.S. Dist. LEXIS 15751, at *40 (S.D. Fla. Feb. 3, 2016) (overruling Bandas' objection to claims procedure, citing cases).

substitute its own judgment for that of counsel." *Id.* None of the Objections overcomes the strong presumption of fairness or otherwise justifies disapproval.

15. **Settlement Relief Inadequate**. The objection that the settlement relief is inadequate is made by two lawyers who have never prosecuted an FCRA class action, nor appear to understand the complexities of the FCRA law that governs this case.[10] The adequacy of the relief has to be set in the context of the state of the current case law, which is thoroughly briefed in the Motion for Final Approval. *See* Doc. 57 14-20; *see also **Klein***, 705 F. Supp. 2d at 656 ("The court's analysis of the reasonableness of the recovery provided under the Settlement Agreement can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount"). The adequacy of the relief should also be measured against other "account review" class actions, the settlement of which has been approved by other courts, including by two Judges in the Western District of Texas.[11] *See, e.g., **Wilkins v. HSBC Bank Nevada, N.A.***, No. 14 C 190, 2015 WL 890566, at *10-12 (N.D. Ill. Feb. 27, 2015)(comparing the instant TCPA class action to the "average" such action in determining fairness and approving the settlement); *See also* Doc. 57-3, p. 27, for full comparison. The adequacy of the relief should be measured not by two professional objectors who game the system for profit, but by the 472,000 class members who filed claims and thus voiced their approval of the settlement, and by the parties who are well versed in the FCRA and class actions, and by the $8.75 million Chase agreed to pay and the audits to which Chase agreed in the settlement.

---

[10] No objections have been received from lawyers who regularly litigate FCRA class actions.

[11] ***King v. United SA Federal Credit Union*** SA-09-CA-0937-NSN; 744 F. Supp. 2d 607, 617-8 (W.D. Tex. 2010) (Magistrate Judge Nowak); ***Sleezer v. Chase Bank USA, N.A.***, No. 07-cv-961 (W.D. Tex.) (Judge Hudspeth).

16.     Viewed in the proper context, the settlement relief available to class members in this case is more than adequate.  The Settlement is the largest for account review soft credit pulls in the history of the FCRA, and the amounts to be paid under this Settlement represent a fair assessment of the Settlement Class Members' significant risk of receiving nothing at all in a litigated case.   Recent case law runs contrary to Plaintiff's position that if an account is foreclosed upon or discharged in bankruptcy, there is no longer a permissible purpose to review an account under the FCRA.  *See, e.g.*, ***Germain v. Bank of Am.***, No. 13-cv-767, 2014 WL 5802018, at *5 (W.D. Wis. Nov. 7, 2014) (after loan is discharged in bankruptcy, "the consumer is not personally liable for the loan, but he or she still 'owes' the lender in the form of the property (the collateral)").   Additionally, when the parties reached a final agreement in September 2015, it was possible that a decision from the U.S. Supreme Court in ***Spokeo, Inc. v. Robins*** would entirely foreclose Plaintiff's lawsuit.  Moreover, the FCRA allows for statutory damages only upon a showing of willfulness.  The Supreme Court has made clear that there can be no willful violation of the FCRA—a "less-than-pellucid" statute—unless a decision of a court of appeals or "authoritative guidance" from a responsible federal agency clearly prohibits the challenged conduct under the statute.  *See* ***Safeco Ins. Co. of America v. Burr***, 551 U.S. 47, 69-70 & n.20 (2007).   No appellate authority and no agency rule or guidance addresses the permissibility of pulling consumer credit reports in the circumstances implicated here.  Given the many risks attending Plaintiff's claims, the Settlement is a fair compromise.

17.     **Inadequacy of Class Counsel**. The objection that the class representative and class counsel are inadequate rings hollow when neither of the objectors provide any evidence that indicates they have ever prosecuted a class action before, or ever prosecuted an FCRA "impermissible access" case before.  Nor does either objector state what they would have or

could have done differently to achieve a better result. *See, e.g.,* ***Henderson v. Volvo Cars of N. Am., LLC***, No. CIV.A. 09-4146 CCC, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013) ("[C]omplaining that the settlement should be 'better' is not a valid objection."); ***Browning v. Yahoo! Inc.***, No. C04-01463 HRL, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007) (same); ***In re Philips/Magnavox Television Litig.***, No. CIV.A. 09-3072 CCC, 2012 WL 1677244, at *10 (D.N.J. May 14, 2012) (same, adding that "objections based solely on the amount of the award lack merit")). Furthermore, Mr. Bingham and/or Mr. Hervol, have been found by several judges in this judicial district to be "adequate" as court appointed class counsel.  *See, e.g.*, ***King v. United SA Federal Credit Union***, SA-09-CA-0937-NSN; 744 F. Supp. 2d 607, 617-8 (W.D. Tex. 2010) (Magistrate Judge Nowak); ***Sleezer v. Chase Bank USA, N.A.***, No. 7-cv-961 (W.D. Tex.) (Judge Hudspeth); ***Boles v Moss Codilis***, 5:10-cv-01003-XR (Judge Rodriguez); ***Munoz v. Edward T. Burke and Assoc. P.C.***, SA-05-CA-00223-RF (Judge Ferguson).

18**.** **Injunctive Relief Inadequate**.  The objectors assert that the injunctive relief is without value to the class.  Actually, this, and the edification benefit of knowing about the claim, is a centrally important component of the relief, based upon hundreds of calls from class members to Class Counsel and their staffs.  Many courts have approved FCRA cases where the only relief for class members is injunctive relief.  *See, e.g.*, ***Berry v. Schulman***, 807 F.3d 600, 608 (4th Cir. 2015) (where proof of willful violation of FCRA was "speculative at best" release of claims in exchange for injunctive relief was "demonstratively fair and adequate").

19.     The audit provision guarantees that for three years from Final Approval Chase will conduct annual audits designed to confirm that its periodic Account Review Inquiries have excluded individuals who owe no debt to Chase, retain no interest in any property securing a debt owed to Chase, and have no other account with Chase.  Settlement Agreement ¶ 37.

20.     This injunctive relief goes beyond the requirements of the FCRA, which has no requirement that users of credit reports conduct any audit of their account review procedures.  In fact, this relief would be unavailable without a settlement, as injunctive relief is not available under the FCRA in this Circuit.  *See Washington v. CSC Credit Servs.*, 199 F.3d 263, 268 (5th Cir. 2000); *see also Garza v. Sporting Goods Properties*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *16 (W.D. Tex. Feb. 6, 1996) (An important part of the settlement value was defendant's agreement to change practices because "this Court may or may not have the power to grant the requested relief.").  As to the value of the injunctive relief to the Settlement Class, this relief directly addresses the injury that the Settlement Class alleges.  Objectors cannot consistently claim that they suffered injury from allegedly impermissible Account Review Inquiries *and* that audits of Chase account review practices do not provide relief.

21.     Moreover, it is far from clear that the FCRA prohibits Account Review Inquiries on closed accounts.  In the 45-year history of the FCRA, only two reported cases have found that it is impermissible to conduct such Account Review Inquiries.[12]  Additionally, a few cases asserting the impermissibility of conducting soft pulls on closed accounts have survived motions to dismiss.[13]  More often, including in the Fifth Circuit, courts have determined that the FCRA is ambiguous and does not distinguish between open and closed accounts, leaving open the

---

[12] *Haberman v. PNC Mortg. Co.*, No. 4:11-cv-126, 2012 U.S. Dist. LEXIS 191086, at *24-25 (E.D. Tex. Sept. 7, 2012) (bench trial, finding willful or reckless impermissible account review on discharged closed accounts, but defendant did not contest issue of permissibility of account reviews on closed accounts); *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934 (S.D. Ohio 2008) (held on cross motions for summary judgment: no permissible purpose to conduct account review on account discharged in bankruptcy).

[13] *Pulliam v. Am. Express Travel Related Servs. Co.*, No. 08-cv-6690, 2009 U.S. Dist. LEXIS 47864, at *6-10 (N.D. Ill. June 4, 2009) (dismissed by stipulation of the parties (N.D. Ill. April 13, 2010 Doc. 116)); *Martin v. Asset Acceptance, LLC*, No. 11-cv-6256, 2012 U.S. Dist. LEXIS 10340,3 at *9-11 (N.D. Ill. July 25, 2012) (dismissed by stipulation and before class certification (N.D. Ill. Mar. 25, 2013, Doc. 54)); *Barton v. Ocwen Loan Servicing LLC*, No. 12-cv-162, 2012 U.S. Dist. LEXIS 137536, at *8-9 (D. Minn. Sept. 26, 2012) (dismissed by stipulation of the parties (D. Minn. Feb. 13, 2014 Doc. 105)).

question of whether it is permissible to conduct Account Review Inquiries on closed accounts. *See Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-1319 (11th Cir. 2009) ("[W]e cannot say that the term 'account' necessarily means 'an open account[]'"; affirming summary judgment dismissal of plaintiff's claim that it was impermissible to conduct account reviews on closed accounts); *Wilting v Progressive County Mutual Insurance Co.*, 227 F.3d 474, 476 (5th Cir. 2000) (rejecting Plaintiff's claim that only "existing" accounts could be reviewed and noting that "neither the [FCRA] nor the FTC's commentary on the Act suggests that a report may only be permissibly obtained during particular points in the parties' relationship[]"); *see also Banga v. Experian Info. Solutions, Inc.*, 473 F. App'x 699 (9th Cir. 2012) (affirming district court's holding that it is not objectively unreasonable to read the FCRA as permitting inquiries on closed accounts). Thus, the injunctive relief in the Settlement goes far beyond "restat[ing] the obligation that Chase has under existing law." Cox Objection, Doc. 30 at 3.

22.    **Cy Pres distribution Inadequate.**  Any cy pres award in this case will come only after checks have been mailed to class members, and only if some class members fail to cash or receive their checks, and then only in that likely minimal amount.  *See* Settlement Agreement ¶¶ 74-75.  In other words, any cy pres distribution here would result solely from practical necessity, and in no way constitute a diversion of funds from class members to the cy pres recipient.  If it economically feasible, Class Counsel certainly supports a second distribution of funds that result from uncashed checks.  However, due to the large number of claimants in the case, it will likely not be economically feasible to make a second distribution.  For example, if $10,000 of checks go uncashed, each claimant would be entitled to $0.02.  It would cost much more than $0.02 to mail the checks to claimants, and then perhaps result in another tranche of uncashed checks.  *See*

*Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (cy pres is appropriate where it is infeasible to make further distributions when amounts are too small to make individual distributions economically viable).   Mr. Cox suggests that money from uncashed checks should escheat to the state.  That objection fails to recognize, however, that the Texas Supreme Court has ruled that unclaimed class action funds do not escheat to the State. *Highland Homes Ltd. v. State*, 448 S.W.3d 403,406 (Tex. 2014); *see also First Albany Corp. v. Am. Integrity Corp.*, 2015 U.S. Dist. LEXIS 164559 *3-4 (E.D. Pa. Dec. 8, 2015) ("Determining whether each claimant's state has an unclaimed property law, whether the law applies to uncashed checks from class action settlement awards and how the law interacts with other states' unclaimed property laws would be impracticable").

23.  **Attorneys' Fee Request**.  Both Bandas and Cox complain that the one-third fee request, which includes reimbursement of costs and expenses, is excessive.  However, the Court will award attorneys' fees that it believes are reasonable, and does not need Mr. Bandas and Mr. Cox to remind the Court of its duties regarding an award of fees and expenses.  Mr. Bandas further contends that the Court should measure Counsel's one-third fee request against the settlement fund only *after* administrative costs have been deducted.  That is not how class action settlements work.  The only authority Mr. Bandas cites—a 2006 case from the Northern District of Illinois—runs headlong into the contrary conclusion of a respected Texas federal judge. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d_1040, 1077-1078 (S.D. Tex. 2012) (Judge Rosenthal) ("District courts routinely include such administrative costs in calculating attorneys' fees awards") (citation omitted).

24.  Messrs. Bandas and Cox assert that fees should be paid only on the value of the claims actually made, not the entire value of the settlement, which is about $22 million, with a

$8.75 million cash component.  Fees are awarded based upon a percentage of the total benefits made available, regardless of the actual payout to the class following a claims process.  ***Boeing Co., v. Van Gemert***, 444 U.S.472, 480-481 (1980); ***Wilson v. Everbank***, 2016 U.S. Dist. LEXIS 15751, *43-44 (S.D. Fla. Feb. 3, 2016).  In a non-reversionary, common fund case such as this one, it would be an abuse of discretion for the court to award fees based on a percentage of the amount or number of claims submitted.  *See **Williams v. MGM-Pathe Communs**.* Co. 129 F.3d 1026, 1027 (9th Cir. 1997)**.**

25.      In addition to their common objections, Bandas and Cox make a few unique, but still boilerplate, objections:

a.      **Claims Procedure.**  Mr. Bandas objects to the claim procedure in this case, as he has done in other cases, all without success.  The gist of his argument is that instead of having prospective class members file claims, they should have all just been mailed a check.  The objection ignores the nature of this case, in which plaintiff brought an action on behalf of persons alleging that Chase accessed their credit reports after they ceased to have credit relationships with the bank.  At the time the parties structured the settlement it was impossible to know how successful the mailed notice program would be.  It was emphatically necessary, given the nature of the class, to ask class members to affirm their membership in the class, their desire to file a claim, and — most importantly — either to affirm their address or designate an address to which any payment should be sent.  It would have been irresponsible to simply send checks.  More generally, "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment."  *See **Schulte v. Fifth Third Bank***, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011).  "Claims-made procedures strike a proper balance between, on the one hand, avoiding fraudulent claims and keeping administrative costs low, and on the other hand, allowing

as many class members as possible to claim benefits." *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1010 (E.D. Wis. Aug. 16, 2010). This is particularly important where a case presents a class of this size, and determining amounts to be paid directly would potentially make settlement more costly than litigation. *See Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 696 (S.D. Fla. 2014*)* (manual review of all borrower files for a class of 800,000 would take a thousand people every month).[14]

Moreover, the objectors' criticism of the claims-made structure "does not impact the fairness, reasonableness, or adequacy of the proposed settlement." *Casey v. Citibank, N.A.,* 2014 U.S. Dist. LEXIS 156553 at *2. This Settlement is fair, reasonable, and adequate independent of the number of claims filed. *Fladell v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 156307, *12 (S.D. Fla. Oct. 29, 2014) (citations omitted). And in this case, the extraordinary number of claims filed indicates that the claims process was easy for the class to understand and participate in, and the number of claims confirms the class members' strong support for the settlement, thus demonstrating that the settlement and claims process established by the settlement was fair, reasonable and adequate. *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 627 (E.D. La. 2006).

     **b.**    **Confidential Provision.** Without citation to any authority, Mr. Cox claims the settlement is not fair because of the insertion of a confidential provision (made available to the Court) which allowed Chase to terminate the settlement if a certain number of class members decide to exclude themselves. Mr. Cox does not provide any explanation as to why this is not

---

[14] Here, for example, a check of even $10 to each class member would have required Chase to expend more than $22 million dollars in a settlement, with the cost of mailing those checks likely another $10 million. There is no reason to think settlement would have been possible in that event. *Casey v. Citibank, N.A.,* 2014 U.S. Dist. LEXIS 156553 at *2 (N.D.N.Y Aug. 21, 2014*)* (claims-made structure fair, reasonable, and adequate because, inter alia, defendants would not have agreed to direct-pay structure and "[t]he Court does not have the authority to impose a preferred payment structure upon the

fair.  The Manual for Complex Litigation, Fourth, endorses such provisions, acknowledging that they "might promote settlement by giving a defendant greater assurance of ending the controversy and avoiding the expense of litigating numerous individual claims."  MCL 4th § 21.652.  Regardless, Chase has not attempted to terminate the settlement, so the objection is wholly irrelevant and moot.

      **c.**     **Mass Opt-Outs.** Mr. Cox also complains that the settlement agreement and the preliminary approval order are unfair because "mass opt-outs" are prohibited.  Mr. Cox provides no citation or authority for allowing mass opt-outs.  In fact, when faced with mass unsigned opt-outs submitted by counsel, one court in this Circuit noted that such counsel may have breached their fiduciary and ethical duties to their clients.  *See **In re Oil Spill by Oil Rig Deepwater Horizon***, 910 F. Supp. 2d at 939 ("[M]ass unsigned opt outs are highly indicative of a conclusion that … counsel [for such opt-outs] did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them").  And even if mass opt-outs were proper, this complaint is irrelevant and also moot because the deadline to opt-out has run; only 172 class members elected to exclude themselves from the settlement as of April 13, 2016; and neither Mr. Cox nor any other party appear to have attempted to engineer a "mass opt-out."

      WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Court overrule all the objections made by Bandas and Cox, and approve the settlement as proposed. Plaintiff requests general relief.

---

settling parties").

Respectfully submitted,

RILEY & RILEY
Attorneys at Law
320 Lexington Avenue
San Antonio, Texas 78215
(210) 225-7236 Telephone
(210) 227-7907 Facsimile
charlesriley@rileylawfirm.com

By:    /s/ Charles Riley
          CHARLES RILEY
          State Bar No. 24039138


LAW OFFICE OF H. ANTHONY HERVOL
4414 Centerview Dr., Ste. 200
San Antonio, Texas 78228
(210) 522-9500 Telephone
(210) 522-0205 Facsimile
hervol@sbcglobal.net

By:    /s/ H. Anthony Hervol
          H. ANTHONY HERVOL
          State Bar No. 00784264



BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819 Telephone
(210) 224-0141 Facsimile
ben@binghamandlea.com

By:   /s/Benjamin R. Bingham
          BENJAMIN R. BINGHAM
          State Bar No. 02322350

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves e-mail notification of such filing to the following counsel of record on this 20th day of April, 2016, and a true and correct copy of the above and forgoing has therefore been served on the following counsel of record for the Defendant at the e-mail addresses listed hereunder:

Noah A. Levine
Alan E. Schoenfeld
Fiona Kaye
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
noah.levine@wilmerhale.com
alan.schoenfeld@wilmerhale.com
fiona.kaye@wilmerhale.com

Wm. Lance Lewis
Kenneth A. Hill
QUILLING, SELANDER, LOWNDS
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
llewis@qslwm.com
kenhill@qslwm.com

In addition, the undersigned hereby certifies that the foregoing will be served upon the objecting parties/amicus curiae named herein below via the methods indicated hereunder, on April 21, 2016:

Thomas L. Cox, Jr.
7129 Tabor Dr.
Dallas, TX 75231-5647
tcox009@yahoo.com
Via electronic mail and U.S. mail

Marilyn Paul
Individually and c/o R. Holstein
130 N. Garland Court
Chicago, IL  60602
holsteinlaw@sbcglobal.net
Via electronic mail and U.S. mail

22

T. Johnson
120 W. Madison St., Suite 600
Chicago, IL  60602
tjohnson@johnsonchicago.com
Attorney for Marilyn Paul
Via electronic mail and U.S. mail

Christopher T. Bandas
Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78471
Attorney for Amirali Jabrani
Via electronic mail and U.S. mail

Mary B. Rodriguez a/k/a Mary Ann Bloom
9621 Graham St., # 79
Cypress, CA 90630
Via U.S. mail

Monica Lewis
P.O. Box 2582
Bridgeview, IL 60455
Via U.S. mail

J.C. Haigh
Darla Haigh
5407 Raintree Dr.
Missouri City, TX 77459-6215
Via U.S. Mail

Clivens Goldman
3277 Lago De Talavern
Lake Worth, FL 33467
Via U.S. Mail

Barbara Ellis
8293 South Huron River Dr.
South Rockwood, MI 48179
Amicus Curiae
Via U.S. Mail

_/s/ H. Anthony Hervol_
H. Anthony Hervol
Co-Class Counsel