FILED

APR 27 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

EVA MARISOL DUNCAN

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

Case No. 5:14-cv-00912-FB-JWP

REPLY TO PLAINTIFF'S RESPONSE TO AMIRALI JABRANI'S OBJECTIONS

## INTRODUCTION

The estimated value of the Plaintiffs' claims in this FCRA class action is, *at the very least*, $220 million,[1] yet the proposed settlement awards them far less than $5.8 million, once the still undisclosed administrative expenses are deducted.[2] At the same time, the prospective injunctive "relief" is illusory.

For this, class counsel ask $2.9 million, which is 33.33% of the gross fund (or 50% of the net fund). Class counsel do not respond to Objector's assertion that this amount is exceeds the applicable benchmark of 25% benchmark. Nor do they address Objector's complaint regarding the lack of any lodestar analysis.

Instead, class counsel spend the majority of their response making *ad hominem* attacks on Christopher Bandas and Objector in cases unrelated to the instant litigation. Although Objector will briefly address this inflammatory rhetoric, this Court should maintain its focus on the issue at hand—whether the relief offered in the settlement is fair to the class and whether class counsels' attorneys' fees in this case are excessive. It should be noted that this response has been prepared with the assistance of Christopher A. Bandas, of Bandas Law Firm, P.C., Corpus Christi, Texas.

---

[1] Class counsels' response does not dispute Objector's assertion that "[e]ven at the low end range of the class counsels' damages' model, the minimum value of the class members' claims is $220 million ($100 x 2,200,000 class members)." Objection, at 4-5. This figure is based on "[r]oughly 2.2 million individuals nationwide" who are "members of the proposed settlement class[,]" and the fact that Plaintiffs allege that class members "are entitled to $100-$1000 each, plus punitive damages, and reasonable attorney's fees. . . ." Preliminary Approval Order, at ¶ 5(a) (Doc. 29); Original Complaint, at ¶ 2 (Doc. 1). The high end of the value of the 2.2 million class members' claims would be $2.2 billion ($1000 x 2,200,000 class members). The less than $5.8 million provided to the class would amount to around a quarter of one percent of the value of the high-end estimate of Plaintiffs' claims.

[2] After review of the CF/ECF, Objector was unable to locate any document in which class counsel disclosed the settlement administration expenses. Objector would continue to object to this omission by class counsel.

I.  **Courts Recognize the Valuable Role of Objectors in Ensuring a Fair Settlement to the Class.**

Given the lengths class counsel go to disparage Objector and Mr. Bandas, it is important to note that the objection process is recognized by courts as a vital check on the class action procedure. That is why all class notices are required to explain the objection procedure to class members. The class notice here, as with all class actions, *specifically invites class* members who do not like the settlement to file objections. *See* Class Notice, at 7.[3] Class counsels' response to the invited objection – i.e., lodging personal attacks at objector and Mr. Bandas – should be viewed with judicious skepticism.

Although it is clear that class counsel in this case do not like objectors, court recognize their intrinsic value to the process. "[C]lass action lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class; and given the role of such interlopers in preventing cozy deals that favor class lawyers and defendants at the expense of class members, their requests for fees must not be slighted." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.). "Objectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012). "Objectors can also "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the

---

[3] The class notice explains: "If you are a member of the Settlement Class, you can object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and expenses, and/or the service payment to the Class Representative." Class Notice, at 7.

fee motion of class counsel").

Mr. Bandas' prior representation of objecting class members "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010) (emphasis added). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010); *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010).

Other courts have explicitly held that the motive of objectors or their counsel is simply not relevant to the merits of an objection. *See, e.g., Corpac v. Rubin & Rothman, LLC*, 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012)("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial once of maximizing [his] recovery, would make any fact of consequence to the determination of reasonable fees, the amount of damages or the restriction on pursuing future claims] more or less probable.'") (citing *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984)). It is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed.

## II. Mr. Bandas' Clients Have Prevailed in Overturning Numerous Unfair Settlements Like this One.

Since class counsel raised the issue, however, it should be noted that Mr. Bandas' clients have prevailed many times despite the all-too frequent accusation of frivolous objections. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District Court's orders approving settlement and the

fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings"); *Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (in a case in which Mr. Bandas represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed").

Even in a recent appeal in which Mr. Bandas' client lost, the Third Circuit commended the objectors as "well-intentioned in making thoughtful arguments against certification of the class and approval of this settlement. . . . They aim to ensure that the claims of retired players are not given up in exchange for anything less than a generous settlement agreement. . . ." *In re Natl. Football League Players Concussion Injury Litig.*, 15-2206, 2016 WL 1552205, at *29 (3d Cir. Apr. 18, 2016).

Regardless, the merits of Objectors' objections are, of course, the focus of the Court's attention, and the issue on which class counsel should have focused. A review of the objection, proposed settlement, and requested attorneys' fees makes clear that Mr. Jabrani's objection should be granted.

### III. The Settlement in this Case Does Not Pass the Careful Scrutiny Mandated under Rule 23(e).

From the outset, it should be observed the defendant is indifferent as to the allocation of any settlement payments between the class and class counsel. *See, eg., Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985) (Jon O. Newman, concurring), *cert. denied*, 475 U.S. 1143 (1986); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013). A settling defendant only cares about its total settlement payments and keeping them as low as possible. *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*") ( when class counsel "negotiates simultaneously for the settlement fund and for individual counsel

fees there is an inherent conflict of interest. The defendant . . . is 'uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney;' accordingly, the defense operates as no brake against the invidious effects of such a conflict of interest.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), *aff'd* 577 F.2d 335 (5th Cir. 1978)).

Class counsel has a natural incentive to enrich itself at the expense of the unnamed members of the class. *See Southwest Voucher*, 799 F.3d at 712 ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost"). "For these actors, but not for the class members, the ideal settlement may be a moderate sum favorable to the defendant but disbursed mostly to class counsel." *Id.*

For these reasons, "trial judges bear the important responsibility of protecting absent class members, and must be assur[ed] that the settlement represents adequate compensation for the release of the class claims." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir.2011)). As a Justice in the Southern District of Texas remarked with respect to a common fund settlement:

> there is a greater need for the judge to act as a fiduciary for the beneficiaries (who are paying the fee), particularly in the class action situation, because few if any of the action's beneficiaries actually are before the court at the time the fees are set. Judicial scrutiny is necessary inasmuch as the fee will be paid out of the fund established by the litigation, in which the defendant no longer has any interest, and the plaintiff's attorney's financial interests conflict with those of the fund beneficiaries. As a result there is no adversary process that can be relied upon in the setting of a reasonable fee. Furthermore, "the plaintiffs' attorney's role changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit."

*In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 744-45 (S.D. Tex. 2008) (quotations omitted).

Moreover, courts recognize that "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). To protect against this, courts employ an even higher level of scrutiny for evidence of collusion or other conflicts than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*

Here, the pre-certification settlement in this case is patently unfair to the vast majority of putative class members and does not pass the careful scrutiny mandated.
The $5.8 million for the class (without excluding the necessarily considerable administrative expenses) is not fair, adequate, or reasonable considering the value of the claims released (which are valued by Plaintiffs at between $220 million and $2.2 billion) and the disproportionate $2.9 million sought by class counsel.[4]

It is not enough for class counsel to dismiss Objector's assertions on the basis that Objector "they have ever prosecuted a class action before, or ever prosecuted an FCRA 'impermissible access' case before." Response to Objection, Doc. 62, at 13. No expertise in FCRA litigation is required to recognize this as a bad settlement for the class. Less than $5.8 million is provided to the class for claims worth at least $220 million, while class counsel take a disproportionate $2.9 million from the common fund at the expense of the class. Under this standard proposed by class counsel, the vast majority of judges would not be qualified to review the fairness of the settlement. And of course, class counsel, and not Objector, have the burden of establishing the fairness of their settlement. *See* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797.1 (3d ed. 2005); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983); *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 680 (S.D. Tex.), *aff'd*, 577 F.2d 335 (5th Cir. 1978).

---

[4] As noted, Objection is also made that class counsel is inadequate for negotiating the unfair settlement, which ensures minimal payout by Chase in exchange for substantial attorneys' fees for class counsel, all at the expense of the class members. FED. R. CIV. P. 23(g)(4)("[c]lass counsel must fairly and adequately represent the interests of the class").

Finally, the injunctive component of the settlement is illusory and does not salvage the grossly inadequate monetary relief. Nor does it justify class counsels' exorbitant fee request. The injunctive relief is prospective only, while the class is defined as including only former Chase customers. *See* Settlement Agreement, at 5, ¶ 35. Chase's promise to perform account review inquiries is something which it should be doing anyways. Its promise to do so for only three years waters down any theoretical relief provided. Ultimately, it is difficult to ascertain the extent of any relief given the settlement's terse description of the injunctive relief.

### IV. Class Counsel Has No Response to Several of Objector's Arguments that their Fees are Excessive, Which They Are.

Nearly $3 million in attorneys' fees (which class counsel justify as 33.33% of the gross common fund) is a grossly excessive award for class counsel in this case. Class counsel has no response to Objector's argument that the amount improperly exceeds the typical benchmark of 25%. *Jones v. JGC Dallas LLC*, 3:11-CV-2743-O, 2014 WL 7332551, at *8 (N.D. Tex. Nov. 12, 2014) ("[a]s noted, the percentage for attorneys' fees involving a common fund is typically 25% to 30%") (citing *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 675 (N.D. Tex. 2010)). In *In re Heartland Payment Sys.*, an FCRA class action case relied on by class counsel, the district court calculated a 26.2% benchmark. 851 F. Supp. 2d 1040, 1077-1078 (S.D. Tex. 2012) (Judge Rosenthal). Objector would assert that given the poor result achieved here, the award should be below the benchmark. But, even a 25% benchmark based on the gross fund would reduce class counsels' requested attorneys' fees from $2.9 million to $2.18 million.

Class counsel also has no response to Objector's assertion that class counsels' percentage-based award of attorneys' fees should be reconciled with a lodestar-cross check. *See* Objection, at 9 (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998); *Braud v. Transport Serv. Co. of Illinois*, CIV.A. 05-1898, 2010 WL 3283398, at *9 (E.D. La. Aug. 17, 2010) (noting that generally, the "Fifth Circuit has held that 'this circuit uses [the lodestar method] to assess attorneys' fees in class

action suits.'") (quoting *Strong*, 137 F.3d at 849)). Class counsels' silence and their failure to produce lodestar information should be viewed as an admission that this required analysis would substantially reduce their recovery.

Further, while class counsel urge that this Court not exclude administrative expenses from the gross fund in calculating a percentage of attorneys' fees, they cite a single district court opinion for their claim that "[t]hat is not how class action settlements work." Response to Objections, at 17. In fact, it is how they work and there is considerable authority supporting this method of calculating attorneys' fees.

Although it appears that the Fifth Circuit has not addressed the issue, the Seventh Circuit specifically requires that net recovery, and not gross recovery, must be used for calculating the attorneys' percentage of recovery. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("[c]ounsel cites no authority standing for the proposition that gross recovery is to be preferred over net recovery as the basis for calculating a fee under the percentage-of-recovery method, nor has our review of the relevant case law revealed any authority to that effect"); *Abrams v. Van Kampen Funds, Inc.*, 01 C 7538, 2006 WL 163023, at *6 (N.D. Ill. Jan. 18, 2006); *but see Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ("[w]e note that the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable").

According to class counsel, "the Court will award attorneys' fees that it believes are reasonable and does not need Mr. Bandas and Mr. Cox to remind the Court of its duties regarding an award of fees and expenses." Response to Objections, Doc. 62, at 17. Again, class counsel ignores the judicially recognized role of objectors in serving as a check on the self-interest of class counsel who, like class counsel here, are incentivized to take as much of the settlement as possible. Objector would observe that this Court is not bound to accept the $2.9 million amount submitted by class counsel for the modest settlement achieved here. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d

844, 849 (5th Cir.1998) (with regard to determining the reasonableness of the amount of attorneys fees, a "district court is not bound by the agreement of the parties") (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir.1980); *Foster v. Boise–Cascade, Inc.*, 577 F.2d 335, 336 (5th Cir.1978)).

## CONCLUSION

After considering class counsels' response, Mr. Jabrani re-urges his objection with even greater conviction and asserts that the proposed settlement in this case, which favors class counsel and Chase at the expense of the class members, is unfair, inadequate, and unreasonable. FED. R. CIV. P. 23(e). Accordingly, Objector request that this settlement be rejected. In the alternative, Objector requests that the proposed award of attorneys' fees be rejected or, at minimum, substantially reduced.

DATED:  April 26, 2016                          Respectfully submitted,

/s/ Amirali Jabrani
Amirali Jabrani
2038 Moondance Court
O'Fallon, Missouri 63368
(314) 706-1624

## Certificate of Service

The undersigned certifies that on April 26, 2016, he caused the foregoing Reply to be filed with the court via FedEx Priority Overnight Delivery. The undersigned further certifies that he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Reply upon the following:

Clerk of the Court
U.S. District Court for the
Western District of Texas
655 E. Cesar E. Chavez Blvd.
San Antonio, Texas 78206

Benjamin R. Bingham
Royal B. Lea, III
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212

Noah A. Levine, Esq.
WILMER CUTLER
PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007

DATED: April 26, 2016

_____
Amirali Jabrani